Jesse ELLERSON Jr. *v.* STATE of Arkansas

CR 76-219                                549 S.W. 2d 495

Opinion delivered May 2, 1977
(Division II)

*Spencer & Spencer,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Terry R. Kirkpatrick,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This case is an appeal from a revocation of the suspension of a sentence imposed on a plea of guilty, entered on March 7, 1975, to a charge of possession of stolen property. The sentence was for five years less credit for 29 days' pretrial incarceration. Four and one-half years of the sentence were suspended. On March 26, 1976, appellant was charged with burglary and theft of three chain saws and a gasoline can from the Molnaird Tie Mill. One John L. Green was also charged with this burglary and theft. On May 20, 1976, the prosecuting attorney filed a petition for revocation of the suspension. It was alleged in the petition that the suspension was conditioned upon appellant's good behavior and that the "facts and circumstances surrounding the charges [of burglary and theft] constitute violations of the conditions of the defendant's suspended sentence."

Jack Molnaird, owner of the tie mill and a deputy sheriff, testified that he discovered the burglary and found three Model T-40 chain saws and one gas can were missing and that he later identified the chain saws in the sheriff's office. He said that he was able to identify them because of his familiarity with them through seeing them every day during the operation of his tie mill; and that he bought 12 of these saws, at least once a year, from a distributor and that he was considered a dealer in them. He had no serial numbers and admitted that it would be difficult to distinguish between two saws subjected to approximately the same use over a period of three to five months. He did point out that one of the saws

had a new side piece and a new pull cord. Molnaird said that John L. Green had been employed by him for approximately three or four months on March 23, and 24, and that he questioned Green about the burglary on the morning he discovered it. He testified on cross examination that he first met John Lee Clemons when he sat in on a conversation between Clemons and Deputy Sheriff Camp Middlebrook, in the sheriff's office the day after the burglary. The conversation concerned Jesse Ellerson and the burglary at the mill. He stated that Clemons had said that he had heard Ellerson and Green talking about some chain saws. Molnaird had heard that Clemons had been an informer for the sheriff's office and said that a deal was made with Clemons to pay him $50 if he obtained information concerning Jesse Ellerson and the taking of the chain saws. Molnaird left $50 with the detective division and knew that it had been later paid to Clemons.

Green testified that, after he and Ellerson had drunk and gambled at different places in El Dorado, they went to Molnaird's mill and took the three chain saws and a five gallon gas can, after having pried the lock off the door of the building in which they were kept. He said they put the saws and can in the trunk of his car, took them to Morningstar Road, and hid them in an old camper, refueling the car with the gasoline.

Green said that he had at first taken all the blame, but had been influenced to tell the truth by the remarks of a preacher. Green admitted a previous conviction of burglary. He also admitted that he had previously said that Ellerson was not involved in this burglary and theft, because Ellerson was afraid that he would get more time than Green. He denied that John Lee Clemons had been with him when the saws were stolen and that he had talked with Clemons about them. He heard a recording of his saying that the saws were hidden on the Southfield road, but did not remember having said that. Green also testified that before the robbery he and Ellerson had played dice or craps at a local club, and that Ellerson had gambled with money.

Middlebrook investigated the burglary after it and the absence of Green from the mill had been reported by

Molnaird. Clemons reported to this officer that he had some information about Green and Ellerson, and after Middlebrook arranged for a $50 "tip" for information, Clemons called the deputy and told him to pick up his car, that he had the chain saws in the trunk. When the officer stopped the car it was being driven by Clemons and Ellerson was a passenger. The car was taken to the police station with Clemons driving it. Clemons gave the officers permission to search the vehicle. They did and found the saws later identified by Molnaird. Ellerson was then arrested. Subsequently Green was arrested, but Clemons was not. Green made a confession implicating Ellerson, but exculpating Clemons. Clemons had not previously given information to Middlebrook.

Appellant first argues that he was denied due process of law in that the allegations of the petition for revocation gave inadequate written notice of the claimed violation of the suspension. The language in question is quoted as follows:

"That the facts and circumstances surrounding the above charges are violations of the conditions of Jesse Ellerson, Jr.'s suspended sentence. That based on these violations, the suspended sentence should be revoked, and Jesse Ellerson should be sentenced accordingly."

This statement was preceded by an allegation that appellant had been charged on March 26, 1976 with the crimes of burglary and theft, by Information No. CR 76-66. We deem the petition sufficient to comply with the requirements of Ark. Stat. Ann. § 41-1209 (2) (Crim. Code, 1976) to meet due process requirements, and to support the trial court's finding that appellant had committed the burglary and theft as charged by the state. We also note that appellant made no objection to the form and content of the petition for revocation at the time of the hearing, so these arguments are made for the first time on appeal.

Appellant argues that it was error to permit evidence about appellant's participation in a dice game and that the petition did not specify this ground for revocation of the suspension. We would agree that the petition did not give

appellant notice that revocation was sought on this ground. No objection was made to this testimony when it was offered, so appellant can hardly say that he was taken by surprise. Appellant also cross-examined Green about the dice game; and appellant admitted in his own testimony that he had been shooting dice on the evening before the burglary and theft were committed.

The court's order of revocation constituted a clear and unequivocal finding that it had been established by a preponderance of the evidence that appellant committed the crimes and that the prosecution witnesses were more credible than appellant; but it further included a statement that, from appellant's own testimony, he had violated the laws of the state by entering into a dice game in a public place and had thereby violated the good behavior terms of his probation. We do not consider that the revocation was based upon the conduct relating to the dice game but that the court merely called attention to the uncontradicted evidence on this score.

Appellant also argues that the court abused its discretion in revoking the suspension. The behavior of the defendant, in such cases as this, is regarded as a question of law for the trial court, and the exercise of its broad discretion in the matter cannot be reviewed in the absence of gross abuse of discretion. *Fortner* v. *State,* 255 Ark. 38, 498 S.W. 2d 671; *Calloway* v. *State,* 201 Ark. 542, 145 S.W. 2d 353; *Jones* v. *State,* 252 Ark. 477, 479 S.W. 2d 548. Of course, it would be an abuse of discretion to revoke a suspension of a sentence arbitrarily without any foundation in fact. *Spears* v. *State,* 194 Ark. 836, 109 S.W. 2d 926. Where the decision turns, as it does here, upon the credibility of the witnesses, this court cannot say that there was an abuse of the circuit court's discretion. The trial court specifically found that the state's witnesses were the more credible.

We do not agree with appellant that revocation of a suspension for a subsequent crime prior to conviction of that crime is an abuse of discretion in all circumstances. Under the circumstances prevailing, there was not an abuse of discretion. It is true that we have, as appellant points out, referred by way of dictum in *Hawkins* v. *State,* 251 Ark. 955,

475 S.W. 2d 887, to the American Bar Association "Standards Relating to Probation" in which it is said that a revocation proceeding based solely on another crime *ordinarily* should not be initiated prior to the disposition of that charge. It is significant, however, that this standard has not been adopted in Arkansas, in spite of the fact that it was specifically pointed out in 1971 that Arkansas law, as expounded in *Gross v. State,* 240 Ark. 926, 403 S.W. 2d 75 was contrary to the standard. See, Criminal Procedure: A Survey of Arkansas Law and the American Bar Association Standards, 26 Ark. Law Rev. 169. The decision in *Gross,* which stated many policy reasons for the Arkansas position remains the law in Arkansas.

Neither the same quality or degree of proof is required for the exercise of the court's discretion to revoke the suspension of a sentence as is required for a finding of guilt beyond a reasonable doubt. *Smith* v. *State,* 241 Ark. 958, 411 S.W. 2d 510. Only a preponderance of the evidence was required for a revocation in this case [see Ark. Stat. Ann. § 41-1208 (4) (Crim. Code, 1976)], but a conviction would have required a finding of guilt beyond a reasonable doubt. The evidence incriminating appellant in a trial on the information charging him would have been based to a great extent upon the testimony of an accomplice and that of an informer, who might have also been an accomplice. (The latter was not a witness at the revocation hearing.)

Failure to corroborate the testimony of these two witnesses might have been fatal in a trial. Appellant asserts, however, that there was an abuse of discretion in that the testimony of the accomplice was not sufficiently corroborated at the revocation hearing. The requirement of corroboration is purely statutory [see Ark. Stat. Ann. § 43-2116 (Repl. 1964)], and it prohibits a felony conviction of an accused upon the uncorroborated testimony of an accomplice. 3 Wharton's Criminal Evidence, 351, § 645 n. 53; 30 Am. Jur. 2d 327, Evidence § 1151; 23 CJS 82, Criminal Law § 810 (1) a. The statute does not relate to or govern the revocation of a previous suspension of sentence. *Moreno* v. *State,* 476 S.W. 2d 684 (Tex. Cr. App., 1972), 51 ALR 3d 684; *Dunn* v. *State,* 159 Tex. Cr. R. 520 (1954), 265 S.W. 2d 589. So, the uncor-

roborated testimony of an accomplice is sufficient basis for the revocation of a suspension of sentence. *Hulsey* v. *State,* 447 S.W. 2d 165 (Tex. Cr. App., 1969); *Frick* v. *State,* 509 P. 2d 135 (Okla. Cr., 1973). Furthermore, the circumstances surrounding the recovery of the stolen property might be taken as sufficient corroboration.

Otherwise, appellant's principal attack is on the credibility of Green and is based upon Green's having made prior conflicting statements and upon Green's being accorded leniency. These facts were disclosed to the trial judge, and we cannot say that his holding on the question of credibility was erroneous.

We find no error on the points asserted by appellant, so the judgment is affirmed.

We agree. HARRIS, C.J., and ROY and HICKMAN, JJ.