Harvey HUGHES v. STATE of Arkansas

CR 78-95                                    574 S.W. 2d 888

Opinion delivered December 18, 1978
(In Banc)
[Rehearing denied January 22, 1979.]

724

*Garnet E. Norwood* and *Henry C. Morris,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. On April 18, 1977, appellant Harvey Hughes pled guilty to the third offense of sale of intoxicating beverages in a prohibited area and was sentenced

to the Department of Corrections for 5 years. The entire sentence was suspended on three conditions: (1) Future good behavior; (2) Compliance with the liquor laws; and (3) Payment of costs. On September 9, 1977, the prosecuting attorney filed a Petition to Revoke Suspended Sentence alleging that appellant had violated the terms of the suspended sentence by possession for sale and selling alcoholic beverages in a dry county on September 7, 1977. This matter was not heard within the 60 days required by statutes and upon a timely motion filed by appellant was dismissed. On February 22, 1978, the prosecuting attorney filed a second Petition to Revoke the Suspended Sentence alleging that appellant had on February 21, violated the conditions of the suspended sentence by possession for sale and selling alcoholic beverages in Sevier County, a dry county. Following a hearing of that charge the trial court revoked 2 years of the 5 year suspended sentence because of the sale of one fifth of "Evan Williams straight Bourbon whiskey to Marion Bell on February 21, 1978 for $10.00." For reversal of the revocation of the suspended sentence appellant raises the following points:

I. Appellant was denied due process of law by the Court's off-the-record and out-of-the-appellant's-presence interview of the appellant's doctor leading to his being removed from the hospital to attend and participate in the revocation hearing.

II. Appellant was denied due process of law by the trial court's refusal to require the state to comply with Rule 17.1 of the Arkansas Rules of Criminal Procedure.

III. Appellant was denied due process of law by the State's use of an agent to conduct an unreasonable search of his premises, the same being without probable cause and warrantless.

IV. Appellant was denied the equal protection of the law by the use of evidence of conduct, the sale of a small quantity of intoxicating beverages, to revoke a suspended sentence, thereby denying him the right to trial by a jury, the presumption of innocence, and a right to

require the State to prove its case beyond a reasonable doubt.

V. Appellant was denied due process of law in that the order which originally suspended his sentence on the basic charge, the order being entered April 12, 1977, was not reduced to writing nor were the restrictions and terms of his suspended sentence clearly enumerated to him. The oral version of the Court's conditions for the suspended sentence are nebulous and therefore void for vagueness and not binding upon the defendant.

VI. The revocation of the suspended sentence, in light of appellant's undenied physical condition, and the placing of him into the State Penitentiary for a period of two years amounts to a cruel and unusual punishment."

POINT I. The record shows that prior to trial appellant filed a motion for continuance on the basis that he was incapacitated and unable to appear in court on Friday April 14, 1978, because of medical reasons due to his hospitalization. A medical statement by his local physician Dr. O. D. Brown was attached. The record also shows that when court commenced appellant was present in court and the trial judge explained to appellant that he had talked to the doctor that morning and the doctor had indicated it would be all right for appellant to come into the courthouse for a short hearing concerning the revocation of the suspended sentence. In doing so the trial court pointed out that the reason was because the prior petition for revocation had been dismissed for not being brought within 60 days and that the purpose of this hearing was to grant appellant a speedy hearing. Following those statements of the trial judge the appellant entered no objections nor made any request for the appearance of the doctor. Consequently, we do not reach this contention for we will not examine the matter raised for the first time on appeal. Furthermore, since the doctor wrote the letter at the request of appellant, appellant could not claim the benefit of any privileged communication even if the statements to the doctor involved were privileged, which is doubtful.

POINT II. Within the appropriate time appellant filed a motion pursuant to Rule 17.1 of the Rules of Criminal

Procedure requesting that the prosecution furnish the names and addresses of all witnesses who would testify and support the charge and that appellant be advised of the particular acts and statements relied upon with such certainty as to apprise him fully of the specific charges against him in order to enable him to prepare for trial. The State did not formally respond to appellant's written motion, however, the record does show that there were some informal communications between counsel for the defense and the prosecuting attorney. Without ruling on the sufficiency of the State's performance of its obligations under Rule 17.2, the trial court directed the prosecuting attorney to give counsel for the defense the names of the witnesses to be called, that is the sheriff and one Marion Bell. Counsel for defense was already aware of the testimony of the sheriff and the trial court gave him a continuance during which time he could interview Marion Bell. Following the recess, during which time appellant interviewed the witness Marion Bell, the appellant made no contention before the trial court that he was entitled to an additional continuance for purposes of preparing for trial. Even if it could be said that the prosecuting attorney failed to supply the information in accordance with Rule 17.2, we would still have to hold that on the record before us any failure on the part of the prosecuting attorney was cured by the recess during which time the appellant was permitted to interview the witness. Consequently, any failure on the part of the prosecuting attorney would amount to harmless error.

Under this point appellant also questions the action of the trial court in taking judicial notice that the fifth of Evan Williams Straight Bourbon Whiskey was intoxicating liquor. The record shows that appellant sold the fifth to Marion Bell as whiskey and that the fifth contained a properly affixed and unbroken federal excise tax seal. Rule 201(b) of the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Supp. 1977) provides:

> "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Under the circumstances it would appear that the fifth of Evan Williams Straight Bourbon Whiskey containing the unbroken federally affixed federal tax seal would fall within subsection 2 of Rule 201(b), *supra,* and since appellant did not request an opportunity to test the contents, we cannot say that the trial court committed error in taking judicial notice that the fifth contained intoxicating liquor.

POINT III. Appellant here contends that surreptitious use of private citizen Marion Bell to purchase a fifth of whiskey from appellant amounted to an unlawful search and seizure on the part of the sheriff. We find no merit to this contention. See *Lewis* v. *United States,* 385 US. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966).

POINT IV. We find no merit to appellant's contention that he was denied a right of a jury trial. Arkansas has not adopted the American Bar Association's "Standards Relating to Probation" § 5.3. See *Ellerson* v. *State,* 261 Ark. 525, 549 S.W. 2d 495 (1977).

POINT V. For the first time appellant contends that the order which originally suspended his sentence on the basic charge was not reduced to writing nor were the restrictions and terms of this suspended sentence clearly enumerated to him. We do not reach this issue simply because it was raised for the first time on appeal.

POINT VI. We find no merit to appellant's contention that the revocation of the suspended sentence in light of appellant's undenied physical condition amounts to a cruel and unusual punishment. The punishment here provided is not so disproportionate to the offense committed as to shock the moral sense and to violate the judgment of reasonable men concerning what is right and proper under the circumstances. See *Hinton* v. *State,* 260 Ark. 42, 537 S.W. 2d 800 (1976). Appellant's contention that because of his leukemia and arteriosclerotic heart condition he was in effect sentenced to die in the penitentiary is an argument that should be addressed to those having to do with matters of clemency.

Affirmed.

FOGLEMAN, J., concurs.

HICKMAN and HOWARD, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. Appellate courts are supposed to objectively and fairly review a decision and to evenly apply the law without regard to the end result. In achieving such a goal, invariably a judicial decision is a matter of judgment; since individuals make such judgments, error is really a matter of opinion. I choose to exercise my prerogative in that regard by respectfully dissenting from the majority opinion — it does violence to the integrity of the law.

The hearing below started with the trial court testifying for the State, presenting evidence to rebut that offered by the defendant in his request for a continuance. The hearing proceeded thereafter in such a summary manner that it must have become obvious to Hughes' attorney, as it is to me, that Hughes would not prevail. That is not so much a concern to me as is the manner in which the hearing was conducted.

The majority begins its opinion by reciting that Hughes had been convicted for bootlegging three times; in addition he had been charged with bootlegging but not brought to a hearing because of a procedural defect (which was no fault of Hughes nor his attorney.) The majority proceeds thereafter to summarily dispose of all the appellant's arguments raised on appeal.

In my judgment the majority has pretty well ignored all the rules of law and procedure which, when fairly and evenly applied, assure the innocent as well as the guilty that judgment will be according to due process of law.

Rather than being prefaced with Hughes' past misconduct, my review of this hearing will be based upon the presumption that Hughes is innocent of the charge until proven guilty and that he is entitled to a fair hearing.

Hughes' lawyer first filed a Bill of Particulars in this case six weeks before the hearing, requesting that the State provide him with all the information it had regarding the

charges, evidence, witnesses and so forth. The State filed no response as required by Rules of Crim. Proc., Rules 17.1 and 19.2 (1976). The day before the hearing in this matter, Hughes' lawyer filed a motion for a continuance with the attached statement from Hughes' doctor stating, among other things, that Hughes had leukemia, arteriosclerotic heart disease and a spine condition, and that his presence in court would be detrimental to his health. The next day the court began the hearing by stating:

> Mr. Hughes, I talked to your doctor this morning and he said it would be all right for you to come to the courthouse for a short hearing concerning the revocation of your suspended sentence. . . .

In other words, the trial court, on its own, outside the hearing of Hughes or his lawyer, talked to the doctor and stated from the bench that the doctor's statement filed by Hughes' lawyer would not be grounds for a continuance.

After the court made its initial remarks, Hughes' lawyer asked the court about the two motions that he had filed: the motion for continuance and the motion for the Bill of Particulars. The judge apparently ignored the inquiry regarding the continuance, and inquired of the State's attorney if, in fact, Hughes' lawyer had been given the requested information.

The State's attorney conceded that no answer had been filed to the Bill of Particulars but related that he and Hughes' lawyer had talked about the case. Hughes' lawyer explained that as far as he knew there was only one witness that would be called by the State and that was the sheriff. The court then asked the State's attorney:

THE COURT:

Is there anything in addition to that, Mr. Hodge, that the State plans to prove?

STATE'S ATTORNEY:

Your Honor, the Sheriff was present at a purchase —

the Sheriff didn't make the purchase himself. The Sheriff was present when a purchase was made and was, in fact, wearing a disguise that Mr. Norwood and I have discussed on several occasions.

THE COURT:

Is there anything that is going to come out in this hearing that you think will be surprising to Mr. Norwood?

STATE'S ATTORNEY:

No, Your Honor.

DEFENSE ATTORNEY:

Well, it will surprise me if someone other than the Sheriff comes here and testifies that they made a purchase from Mr. Hughes.

THE COURT:

Can you give him the name of that individual?

STATE'S ATTORNEY:

Marion Bell. He is sitting here in the courtroom.

THE COURT:

Do you want to talk with him, Mr. Norwood?

DEFENSE ATTORNEY:

Yes, Your Honor, I would sure like to talk to him.

THE COURT:

All right, sir, I will give you time to do so.

It was not disputed that Hughes' lawyer had no knowledge of the other witness before the day of the hearing. The court granted Hughes' lawyer an opportunity to question this

witness during a brief recess. After Hughes' lawyer had consulted with the witness, he asked the Court to suppress any evidence that would be introduced at the hearing because it would be the product of an illegal search.

At first the court ruled that such a request was untimely, not having been filed at least ten days before trial. Mr. Hughes' lawyer then called the court's attention to the fact that he had filed a timely motion for a Bill of Particulars which had not been answered by the State, and that he did not know the State had other evidence until five minutes earlier. He stated that, consequently, his motion was filed as soon as he learned of the evidence to be produced by the State. The court then said it would withhold a ruling on the matter until the evidence was heard. (After the evidence was heard, the motion was overruled.)

The hearing proceeded and a witness testified that he purchased a fifth of whiskey from Hughes. The sheriff produced a bottle and it was accepted in evidence. The following colloquy occurred:

Q. Do you know that's whiskey in the bottle?

A. No, I don't, but I sure think it is.

THE COURT:

Has the seal been broken?

BY THE WITNESS:

It has not been, no, sir.

Q. (Cont'd. by Mr. Garnet Norwood) Well, how do we know what that is?

THE COURT:

I will take judicial notice that it is intoxicating liquor.

DEFENSE ATTORNEY:

Now, your Honor, how do you know what that is?

THE COURT:

Because I have authority to take judicial knowledge of that bottle. It's not the first bottle I have ever seen.

The majority opinion states that the bottle "contained a properly affixed and unbroken federal excise tax seal."

The majority answers the questions raised on appeal by essentially finding that Hughes' lawyer failed to make timely or proper objections during the proceedings below.

Hughes' lawyer filed a motion for a Bill of Particulars and it was not answered by the State. He filed a motion for a continuance and it was rebutted by a statement by the court. Such a statement amounted to evidence given on behalf of the State rebutting the affidavit filed by Hughes' lawyer. Hughes' lawyer mentioned after the court's statement that he had filed a proper motion for a Bill of Particulars and a proper motion for a continuance. The majority says that there was no objection made to the court's statement or any request for the appearance of the doctor. What more could Hughes' lawyer have done in view of the fact that the circuit judge had directly controverted, from the bench, his evidence except to call to the court's attention that a proper motion had been filed?

According to Ark. Stat. Ann. § 43-2725.1:

. . . Formal exceptions to rulings or orders of the trial court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor. . . .

I would submit that such an objection was made in this case to the improper remarks of the trial court.

The court dismisses the argument that an answer was not filed to the Bill of Particulars by stating that the court

allowed Hughes' attorney a recess to talk to the witness and it was harmless error on the part of the prosecutor in failing to provide the name of the witness to be used by the State. The State's whole case was based on this witness' testimony and there was no excuse offered for such a failure.

The so-called bottle of whiskey was introduced into evidence and there was no attempt by the State to prove that the bottle contained whiskey. Normally, a witness testifies that it has been tested and found to be intoxicating liquor. The sheriff said he didn't know it was whiskey but he sure thought it was whiskey; the trial judge said he knew it contained intoxicating liquor and he would take judicial notice of it because it was not the first bottle he had seen; and, the majority opinion has placed a federal seal on the bottle. The State still has not proved there was whiskey in the bottle. Where the majority gets the idea that the bottle contained a federal seal is a puzzle to me because the record contains no such reference. Since the bottle is not before us on appeal, that is, it has not been lodged with our clerk as evidence (the sheriff still has the bottle according to the record), I can only presume that the majority is taking license with the testimony or on its own has determined that an "unbroken federally affixed federal tax seal" was on the bottle which permits it to take judicial notice that the bottle contains whiskey.

After concluding that the "federally affixed" bottle contains whiskey, the majority says that, anyway it was Hughes' responsibility to request an opportunity to test the contents. I was not aware that a defendant was required to prove his innocence nor to put his own neck in a noose.

No doubt the trial court was chagrined because the State had failed to bring Hughes to account for other charges within sixty days and those charges had to be dismissed. Furthermore, the trial court, an eminent and respected jurist, was obviously tired of putting up with Hughes who had been repeatedly warned before about his bootlegging. However that may be, the trial court, in my judgment, improperly injected itself into this matter by making a statement on behalf of the State and that error cannot be as easily ignored as the majority does.

Individuals who benefit most from procedural rights guaranteed by the Constitution are rarely worthy of such rights, but the integrity of the law is always worth maintaining regardless of the individuals involved. I would remand the case for a rehearing so that Hughes' lawyer could properly prepare his case, and present it according to our rules, the laws of Arkansas and the Constitutions of this state and the United States.

HOWARD, J., joins in dissent.