Jimmy Wayne RUDD *v.* STATE of Arkansas

CR 92-120                                   825 S.W.2d 565

Supreme Court of Arkansas
Opinion delivered February 24, 1992

*Mikke Connealy Bracey*, for appellant.

*Winston Bryant*, Att'y Gen., *Catherine Templeton*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals his conviction of burglary and his revocation of probation for which he received consecutive sentences of twenty-four years and ten years. Because of a number of prior convictions, appellant was sentenced as a habitual offender. Appellant argues the trial court erred in allowing the state of introduce into evidence his prior burglary, theft, breaking or entering and forgery convictions. He also claims the evidence was insufficient to support the burglary charge. As his final point for reversal, he contends the trial court

erred in its decision to hold appellant's revocation hearing during an interlude at the burglary trial.

The state's burglary charge against appellant arose from Mrs. Jonnie Rogers' claim that appellant broke into and entered her house. Rogers was appellant's friend and had known him for ten years. At trial, the state presented four witnesses, but its case was largely based upon the testimony of Rogers. She testified that, on March 5, 1990, she agreed that appellant could bring his daughter the next day to visit the Rogers children. Because she had to work, she told appellant to come to her house about 4:00 p.m. Rogers said that she was awakened at about 8:15 a.m. on March 6 by someone knocking on her door. By the time Rogers got up and looked out her window, she saw appellant and his daughter getting into his car to drive away. Rogers returned to bed.

Rogers was awakened an hour later after she heard something hit against the back door that rattled the windows. Rogers thought her husband was attempting to gain entrance into the house because she had failed to awaken and to let him in. Instead, after she heard the back door open and went to the kitchen, she saw appellant standing by the refrigerator. He was standing and looking at a scanner sitting on a table, but he had nothing in his hands. Rogers asked appellant what he was doing there, and appellant responded, saying he had seen "two Burnett boys running from the alley and [he] came in to see what they had taken out of her house." Rogers said that, during the conversation, the appellant pulled off a glove that he had been wearing.

Roger's neighbors, Willie Blackman and John McCliden, testified as to having seen the appellant at the Rogers' house on the morning of March 6. Blackman first saw appellant with his daughter at 8:00 a.m., but he later saw appellant alone entering the Rogers' front yard and saw him walking west on Poplar Street. McCliden said that he, too, saw appellant when appellant "[came] out from behind the Rogers' house to sit on the Rogers' porch for a few minutes." Officer Barry Miller, who investigated Rogers' complaint, confirmed that the back door to the Rogers' house had been forced open. After Officer Miller's testimony, appellant moved for a directed verdict. The trial court ruled the state had made a prima facie case, and denied appellant's motion.

Appellant then took the stand, and in his testimony, admitted having entered the Rogers' house on March 6, but denied he burglarized it. Basically, he claimed that Rogers either lied or was mistaken in testifying that she had told appellant on March 5th to bring his daughter at 4:00 p.m. the next day. His version was that he was to bring his daughter the next morning. Appellant claims when he first talked to Rogers on the morning of March 6th, Rogers said that she had to check on a job. Appellant said that he would go to town and come back later. He denied having broken into the Rogers' back door when he returned, but instead claimed he saw two people running (apparently from the Rogers' house) and after hollering at them, he saw the screen door to the Roger's house was wide open. In addition to denying much of Rogers' testimony, appellant denied the versions given by Blackman and McCliden about seeing appellant go west on Poplar Street and observing him sitting on the Rogers' porch.

During the state's cross-examination of appellant, it proffered five prior convictions, contending their admissibility under A.R.E. Rule 404(b). Over appellant's objection, the trial court ruled that, because appellant's defense was based upon mistake, the burglary and theft convictions had independent relevance to show intent and absence of mistake. As a part of its ruling, the trial court further stated that the prejudicial effect in admitting the convictions was outweighed by their probative value. The court further provided the jury with a cautionary instruction directing the evidence of appellant's prior criminal activity was for the limited purpose of establishing motive, opportunity, intention, plan, knowledge or absence of mistake. The trial court also permitted, under A.R.E. Rule 609, the state's impeachment of the appellant by the use of two convictions he received for forgery. At the end of his case, the appellant renewed his motion for directed verdict, which again was denied.

In arguing the state's evidence was insufficient to support a burglary conviction, appellant asserts we must look only at the evidence at the end of the state's case-in-chief when the appellant first moved for directed verdict. He is in error.

In an attempt to bring Arkansas's criminal and civil rules into alignment, we amended A.R.Cr.P. Rule 36.21 to add provision (b). In order to preserve a sufficiency of evidence issue

on appeal, that provision requires a defendant, challenging the sufficiency of the evidence, to move for a directed verdict both at the end of the state's case and the close of the entire case. *See* A.R.Cr.P. Rule 36.21(b) and its Reporter's Note. The appellant, however, poses the question how does he preserve his appeal challenging the sufficiency of evidence issue as the evidence stood at the end of the state's case?[1] Professor LaFave discussed this issue as follows:

> . . . [I]f the motion is made at the conclusion of the prosecution's case and is denied, then the defendant and his counsel must make the tactical decision of whether to put in evidence and thus waive the right to appeal from the previous denial, or to introduce no evidence and preserve that right. Of course, the former course does not bar defendant from again moving for acquittal at the close of all the evidence, but then the court may properly consider evidence damaging to the defendant that may have come out during the presentation of his case.

LaFave and Israel, *3 Criminal Procedure*, § 23.6(a) (1984); *see also* Wright, *Federal Practice and Procedure, Criminal 2d*, § 463 (1982).

■■ Although we have not addressed this issue in the context of a criminal case, this court has decided it in the case of *Willson Safety Products* v. *Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990). There, we held that a motion for a directed verdict at the close of the plaintiff's case has as its purpose a procedure for determining whether the plaintiff has met the burden of establishing a prima facie case, with that question to be resolved by the court as a matter of law. In the event the motion is overruled, the defendant may elect to stand on the motion or to go forward with the production of additional evidence, in which case he has waived any further reliance upon the former motion.

In the present case, appellant chose to testify in an effort to

---

[1] Appellant cites *Washington* v. *State*, 268 Ark. 1117, 599 S.W.2d 410 (Ark. App. 1980), but that case is a court of appeals case which was decided prior to A.R.Cr.P. Rule 36.21(b) and involved a situation where the defendant moved for a directed verdict only at the close of the state's case.

explain his reasons for being found inside the Rogers' house. As described above, his version of what occurred on the morning of March 6th conflicted in many respects to the stories given by Rogers, Blackman, McCliden and Officer Miller. In any event, the appellant, by presenting evidence in his defense, waived his former motion for directed verdict, so we decide his challenge to the sufficiency of evidence as the evidence existed at the close of the case when he renewed his motion.

■■ A person commits burglary when he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein an offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a) (1987). The jury must find that the defendant had the purpose to commit a particular offense. *Forgy* v. *State*, 302 Ark. 435, 790 S.W.2d 173 (1990). However, if he had such a purpose in mind, it could have also been shown by circumstantial evidence, if any existed, but such evidence must be consistent with the guilt of the defendant and inconsistent with any other reasonable conclusion. *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981). Criminal intent cannot be presumed from the mere showing of illegal entry. *Forgy*, 302 Ark. 435, 790 S.W.2d 173; *Norton* v. *State*, 271 Ark. 451, 609 S.W.2d 1 (1980).

■ In considering the evidence in the light most favorable to the appellee, *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991), we hold substantial evidence exists to support the verdict finding appellant guilty of burglary. Clearly, the state's case placed the appellant unlawfully in the Rogers' house on March 6th, and appellant's testimony did nothing but enhance the state's evidence when reading his questionable explanation of why Mrs. Rogers found him in her house. No one testified as to having seen anyone run from the Roger's house except the appellant. And, in giving his account of what happened, his story differed in both major and minor ways from those versions given by Mrs. Rogers and her neighbors. Clearly, the jury could infer from the evidence that he went to the Rogers' house on the morning of March 6th, thinking that Mrs. Rogers would not be at home. He went to the back door, and unlawfully forced it open, only to be surprised by Mrs. Rogers' presence.

■ Concerning appellant's purpose when entering. the

Roger's house, the state introduced appellant's prior theft and burglary convictions to show his intent to commit burglary and to counter appellant's defense of mistake and his explanation as to why he entered the house. Under A.R.E. Rules 404(b) and 403, evidence of another crime will be admitted only if it has independent relevance and its relevance is not substantially outweighed by the danger of unfair prejudice. *Carter* v. *State*, 295 Ark. 218, 748 S.W.2d 127 (1988); *see also Smith* v. *State*, 15 Ark. App. 266, 692 S.W.2d 622 (1985); and *Golden* v. *State*, 10 Ark. App. 362, 664 S.W.2d 496 (1984). The trial judge has wide discretion in determining the admissibility of evidence of other crimes and he will not be reversed on appeal unless he has abused that discretion. *Carter*, 295 Ark. 218, 221, 748 S.W.2d 127, 128.

The probative value of evidence is not usually as glaring as its prejudicial effect. However, here, without appellant's prior theft and burglary convictions, the state had no evidence showing appellant's reason for unlawfully entering the Rogers' house. As a consequence, the probative value of these convictions became paramount in the state's obligation to show appellant's entry was for the purpose of committing a felony. For this reason, we are unable to say the trial judge abused his discretion in allowing appellant's convictions into evidence.[2]

Appellant's final argument involves the trial court's revoking his probation given in an earlier burglary offense before the jury in this case had returned a verdict. While the jury was still deliberating, the trial court conducted a revocation hearing asking the appellant and the state if either of them had additional evidence. Each said no, but appellant suggested it was premature for the trial court to consider the evidence in the instant case until the jury returned its verdict. The court disagreed but stated it would withhold sentencing until it knew the jury's verdict. The

---

[2] Appellant cites the cases of *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954), and *Jones* v. *State*, 274 Ark. 379, 625 S.W.2d 471 (1981), which concern the admissibility of other crimes to show intent, but in arguing these cases, he includes his two foregery convictions which were admitted solely for impeachment purposes under A.R.E. Rule 609. Although we perceive no error in the trial court's 609 ruling, we mention it to underscore that no Rule 609 argument has been raised concerning the two forgery convictions. And while appellant argued the two convictions were inadmissible in the context of Rule 404(b), we did not consider them as part of our Rule 404(b) analysis.

court then revoked appellant's probation finding that, from the evidence presented, at the very least, appellant was guilty of criminal trespass which is sufficient to show he violated the terms and conditions of good conduct.[3]

■ This court rejected the argument made here by appellant in *Ellerson* v. *State*, 261 Ark. 525, 549 S.W.2d 495 (1977). There, the court held that the revocation of a suspension for a subsequent crime prior to conviction of that crime is not an abuse of discretion in all circumstances. *See also Smith* v. *State*, 9 Ark. App. 55, 652 S.W.2d 641 (1983). In support of its holding, the court in *Ellerson* pointed out that only a preponderance of the evidence was required for a revocation, but a conviction required a finding of guilt beyond a reasonable doubt. *Ellerson*, 261 Ark. at 531, 549 S.W.2d at 498. The court's decision in *Ellerson* is consistent with the language contained in Ark. Code Ann. § 5-4-309(d) (1987), which provides a court may revoke the suspension or probation of a defendant *at any time* prior to the expiration of the period of his suspension or probation.

■ In sum, the trial court by law was permitted to conduct the revocation when it did, and in reviewing the record, we conclude the trial court's decision holding that the appellant, at least, committed criminal trespass was supported by a preponderance of the evidence. These reasons alone require our affirmance of the trial court's revocation of appellant's probation.

For the above reasons, we affirm the trial court's decision in all respects.

---

[3] Specifically, appellant's probation was conditioned on leading a law-abiding life, being of good behavior and agreeing not to commit any state, federal or municipal law.