Ozzie ATKINS *v.* STATE of Arkansas

CA CR 98-77                                   979 S.W.2d 903

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered October 14, 1998

William R. Berry, for appellant.

Winston Bryant, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Ozzie Atkins was convicted by a jury of residential burglary and sentenced to twenty years' imprisonment. On appeal, Atkins argues that the trial court erred in denying his motion for directed verdict because there was insufficient evidence of his intent to commit an act punishable by imprisonment. We hold that there was sufficient circumstantial evidence of intent, and affirm.

At 11:30 a.m. on March 13, 1997, Gene Jackson, an evening shift dispatcher for the local sheriff, was home alone watching television in a bedroom when he saw Atkins enter his home unannounced. Jackson did not know Atkins and did not authorize him to enter his home. Although the front door was left slightly open, the storm door was closed.

Jackson testified that he heard the door open and observed Atkins walking toward his stereo, located in a corner of his living room. Jackson stated that Atkins fled the moment they made eye contact with one another. Jackson then sent his Rottweiler, who was lying at his feet, after the intruder, and Jackson also gave chase. He caught up with Atkins as he was trying to jump a fence across the street from Jackson's home.

Jackson testified that when he asked the intruder why he was in his home and to identify himself, Atkins responded that he wanted to ask if he could rake his leaves, and said that his name was "June Bug." Because there were no leaves on the ground, Jackson returned home and called the police. The police apprehended Atkins a few blocks from Jackson's home. Atkins again identified himself to the police as "June Bug," but gave his real name when asked. He was later identified by Jackson as the intruder.

After the State rested, Atkins moved for directed verdict and argued that the State had failed to present sufficient evidence that he entered an occupiable structure with the purpose of committing an unlawful act. The trial court denied the motion, and the jury convicted Atkins of residential burglary.

On appeal, Atkins contends that the trial court erred in denying his motion for directed verdict because the State failed to present sufficient evidence that he had the requisite intent to support a conviction for burglary. He argues that there is no evidence of his intent to commit a felony after his unlawful entry, and that he could well have entered to seek employment, such as raking leaves, and could have simply been admiring Jackson's furnishings. He further claims that he fled because Jackson's dog was intimidating and gave chase after him. In response, the State contends that his felonious intent may be inferred from the surrounding circumstances — the illegal entry, movement toward the stereo equipment, fleeing from the house, use of a false name, and giving an implausible reason for the entry. We agree that these factors constitute sufficient circumstantial evidence of Atkins's intent, and that the trial court did not err in denying the motion for directed verdict.

■ ■     The offense of residential burglary requires proof: (1) that the defendant entered or remained unlawfully in an occupiable structure of another person and (2) that he did so with the purpose of committing an offense punishable by imprisonment. Ark. Code Ann. § 5-39-201 (Repl. 1993 ). It is well settled that the State is required to prove each and every element of the offense. *Oliver v. State*, 14 Ark. App. 240, 687 S.W.2d 850 (1985). Specific intent cannot be inferred solely from proof of an illegal entry. *Forgy v. State*, 302 Ark. 435, 790 S.W.2d 173 (1990); *see also Oliver v. State, supra.* The State cannot shift to the defendant the burden of explaining his unlawful entry, but must also establish the defendant's intent. *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1980). However, intent may be inferred from circumstantial evidence, so long as such evidence is consistent with the guilt of the defendant and inconsistent with any other reasonable conclusion. *Rudd v. State*, 308 Ark. 401, 825 S.W.2d 565 (1992) (*citing Cassell v. State*, 273 Ark. 59, 616 S.W.2d 485 (1981)).

■     It is well settled that the flight of an accused to avoid arrest is evidence of his felonious intent. *Cristee v. State,* 25 Ark. App. 303, 757 S.W.2d 565 (1988); *Oliver v. State, supra.* In *Cristee, supra,* a finding of intent for a conviction of burglary was upheld where, although nothing was stolen, the appellant was seen running, with a crowbar, from the scene of a break-in after the alarm went off. In *Oliver, supra,* although nothing was stolen, a finding of criminal intent for a conviction of burglary was upheld where the appellant was seen running from an illegally entered structure; the alarm triggered by the entry summoned the police. In *Forgy, supra,* a burglary conviction was affirmed because intent could be inferred from the illegal entry, fresh scrape marks around a television, and the fact that other valuables had been prepared for removal. In *Rudd v. State supra,* a conviction of burglary was upheld where the appellant was found hovering around computer equipment with gloves on; appellant's seven prior burglary convictions were also introduced into evidence.

■     The existence of criminal intent or purpose is a question of fact for the jury when the evidence shows facts from which it may be reasonably inferred. *Cristee, supra.* Furthermore, a jury may consider and give weight to any false, improbable, and con-

tradictory statements made by an accused explaining suspicious circumstances. *Walker v. State,* 313 Ark. 478, 855 S.W.2d 932 (1993). Here, the evidence shows that Atkins unlawfully entered Jackson's residence; Jackson testified that he observed Atkins walking toward his stereo equipment; upon being discovered, Atkins immediately ran; Jackson gave chase and caught Atkins while he was trying to jump a fence in front of Jackson's residence; upon capture, Atkins provided a false name and an implausible reason for the entry.

We note that the dissenting judges point out that this case is similar to *Wortham v. State,* 5 Ark. App. 161, 634 S.W.2d 141 (1982), in which a burglary conviction was reversed because there was insufficient evidence of Wortham's felonious intent. In both cases there was no forced entry and no property was taken or even touched. However, there are several crucial differences between the two cases. Wortham was merely observed standing inside the open front doorway of the house he had entered. He ran away when a girl inside screamed. The two girls in the house knew Wortham and he had asked them to be his girlfriends. These circumstances are clearly a far cry from an illegal entry by a complete stranger who then brazenly walks across a room towards the owner's stereo equipment.

While it is true that the State may not shift to Atkins the burden of explaining his unlawful entry, here, he did explain and gave an implausible and even ludicrous excuse for his entry into Jackson's home — that he wanted to rake Jackson's leaves in the middle of spring, when there were no leaves on the ground. By doing so, he provided an additional factor from which the jury could infer his felonious intent.

■ Although none of the factors, standing alone, would sustain the conviction, together they provide sufficient evidence from which the jury could reasonably infer that Atkins had the intent to commit a theft.

Affirmed.

ROBBINS, C.J., and BIRD and MEADS, JJ., agree.

STROUD and JENNINGS, JJ., dissent.

JOHN F. STROUD, JR., dissenting. I dissent from the majority opinion because I think the evidence was insufficient to establish that the appellant intended to commit an act punishable by imprisonment when he entered the residence of Charles Jackson.

The majority opinion relies on five factors to prove the appellant's intent to commit an offense punishable by imprisonment. First, the appellant's entry into the residence was unlawful because it was not authorized. As the majority opinion points out, however, the specific intent, which is required by Arkansas Code Annotated section 5-39-201 (Repl. 1993), cannot be inferred solely from proof of an illegal entry. *See Forgy v. State*, 302 Ark. 435, 790 S.W.2d 173 (1990). Furthermore, the prosecution must separately prove specific intent and illegal entry as independent elements of the crime of burglary, and it cannot shift to the defendant the burden of explaining his illegal entry by merely establishing it. *Norton v. State*, 271 Ark. 451, 453-54, 609 S.W.2d 1, 2-3 (1980). The following discussion in the *Norton* decision is directly on point:

> Not only is illegal entry an independent element of burglary, but it also constitutes a separate crime punishable as criminal trespass . . . . By implying a specific criminal intent from mere evidence of illegal entry, the state not only evades its constitutional evidentiary burden in criminal prosecutions but imposes upon a defendant the responsibility to prove he only committed a criminal trespass or stand in jeopardy of a conviction of burglary.

271 Ark. at 454, 609 S.W.2d at 3. Here, there was no breaking or forced entry as is present in most burglary cases. The appellant entered a house in the middle of the day with a truck parked in front of the house, the door to the house open, and a television turned on inside; these were hardly inviting circumstances for a burglary.

The second factor the majority relies on was that Mr. Jackson testified that the appellant was walking toward a stereo and entertainment center when Mr. Jackson saw him. Heretofore, Arkansas cases have required the moving of an object or at least the touching of an object to infer an intent to remove it. Walking toward an object is certainly short of that, and in fact it would be

difficult to walk in a house without walking toward some moveable object or piece of furniture. Evidence that items had been moved went to the sufficiency of the evidence to sustain burglary convictions in *Oliver v. State,* 14 Ark. App. 240, 687 S.W. 2d 850 (1985); *Jimenez v. State,* 12 Ark. App. 315, 675 S.W.2d 853 (1984); and *Golden v. State,* 10 Ark. App. 362, 664 S.W.2d 496 (1984) (reversed and remanded on other grounds).

The third factor relied upon by the majority is the fact that appellant fled. Arkansas cases where fleeing has been considered a factor to show intent include the following fact situations: fleeing after entering a building at night and ignoring the surveillance officer's order to freeze, *Grays v. State,* 274 Ark. 564, 572 S.W.2d 847 (1978); ignoring an order to halt and fleeing the investigating officer after a burglar alarm was set off, *Oliver v. State,* 14 Ark. App. 240, 687 S.W.2d 850 (1985); or fleeing after a girl in the house screamed, *Wortham v. State,* 5 Ark. App. 161, 634 S.W.2d 141 (1982) (distinguished from flight to avoid arrest: burglary conviction was reversed and reduced to criminal trespass). Here, a different reason existed for fleeing: Mr. Jackson sicced his rottweiler dog on appellant. I don't find fleeing under that circumstance to be evidence of the required intent, but rather the exercise of prudent judgment.

The fourth and fifth factors relied upon by the majority opinion were that appellant gave a nickname, "June Bug," and an improbable explanation, that he wanted to rake leaves. He was, however, in the predicament of being penned against a fence when Mr. Jackson asked him what his name was and why he was in the house. There is no indication that "June Bug" is anything other than the name customarily used by appellant, and I do not think it is unusual to give an improbable explanation while penned by a 125-pound rottweiler.

The circumstances of this case and of the *Wortham* case, *supra,* are similar. There was no forced entry, and no objects were moved or touched. In both cases the party fled, one from a screaming girl and the other from a rottweiler. No prior convictions for theft or burglary were present in either case, although such convictions have been the deciding factor to show criminal

intent in at least one Arkansas case. In *Rudd v. State*, 308 Ark. 401, 825 S.W.2d 565 (1992), a homeowner testified that she heard a noise at her back door and found appellant in her kitchen, looking at a scanner on a table. He told her that he had seen boys running from her house, had found the screen door wide open, and had come in to see what they had taken. Neighbors testified that they had seen appellant walk around the house but had not seen any boys, and the investigating officer stated that the back door had been forced open. The appellant also testified, and on cross–examination the State introduced evidence of prior theft and burglary convictions. The appellant in *Rudd* alleged error in the trial court's allowing evidence of his prior convictions and claimed the evidence insufficient to support the burglary conviction. The supreme court discussed these points as follows:

> Clearly, the state's case placed the appellant unlawfully in the Rogers' house . . . and appellant's testimony did nothing but enhance the state's evidence when reading his questionable explanation of why Mrs. Rogers found him in her house. No one testified as to having seen anyone run from the Rogers' house except the appellant. And, in giving his account of what happened, his story differed in both major and minor ways from those versions given by Mrs. Rogers and her neighbors. Clearly, the jury could infer from the evidence that he went to the Rogers' house . . . thinking that Mrs. Rogers would not be at home. He went to the back door, and unlawfully forced it open, only to be surprised by Mrs. Rogers' presence.
>
> Concerning appellant's purpose when entering the Rogers' house, the state introduced appellant's prior theft and burglary convictions to show his intent to commit burglary and to counter appellant's defense of mistake and his explanation as to why he entered the house . . . .
>
> . . . [W] *ithout appellant's prior theft and burglary convictions, the state had no evidence showing appellant's reason for unlawfully entering the Rogers' house.*

308 Ark. at 406, 825 S.W.2d at 568 (emphasis added).

In other words, the *Rudd* court held that forcing entry, looking at a moveable scanner, and giving an implausible explanation were not enough to affirm the burglary conviction without the added factor of proof of prior theft and burglary convictions. In

the case presently on appeal, there are two similar factors: looking at but not touching a moveable stereo and giving an implausible explanation. The differing factors are hardly comparable: fleeing from a rottweiler here, versus forced entry and proof of prior theft and burglary convictions in *Rudd*.

In *Wortham v. State, supra*, the accused entered a house where a loud radio was playing and two girls were painting in a bedroom. He fled when one of the girls saw him in the living room and screamed. He offered no explanation for entering the house, although this court surmised one when it said:

> From the evidence presented, it is not unreasonable to assume that appellant came to the house with no criminal purpose in mind and that he entered the open side door of the house when he could not get anyone to hear his knock above the noise of the music. When the young girl saw appellant and screamed, he could have panicked and then fled.

This court noted that although flight from the scene of a crime can corroborate other proof of guilt, there was no evidence that the accused fled to elude arrest. We found the circumstantial evidence in *Wortham* to be insufficient and reduced the conviction from burglary to criminal trespass. Surely the implausible explanation offered here versus no explanation in *Wortham* does not sufficiently differentiate this case to justify affirming here and reversing in *Wortham*. I would reduce the burglary conviction in this case to criminal trespass, as we did in *Wortham*. I am authorized to advise that Judge JOHN JENNINGS joins in this dissenting opinion.