WAYMOND M. BROWN, Judge
Appellant Ashton Clark appeals the revocation of his probation by the Mississippi County Circuit Court for the underlying charge of residential burglary. He argues on appeal that his revocation should be reversed because (1) there was no corroboration of his codefendant's testimony and (2) the revocation should have been deferred until after the new murder charge was adjudicated. We affirm.
On December 18, 2015, Clark was charged with residential burglary and theft of property. He pled guilty to residential burglary and the theft charge was nol prossed. He was sentenced on April 4, 2016, to five years' probation and ordered to pay fines, fees, and costs. As a condition of his probation, he was ordered "not to commit a criminal offense punishable by imprisonment" and not to associate with persons "engaged in criminal activity." The State filed a petition to revoke on June 27, 2016, alleging that appellant had violated the terms and conditions of his probation by committing the offense of first-degree attempted murder. The State filed an amended petition on December 5, 2016, alleging that appellant had violated the *553 terms and conditions of his probation by committing aggravated robbery and capital murder on October 12, 2016, and by associating with three other offenders while committing the crimes.
Appellant's revocation hearing took place on March 5, 2018. Tresia Seaton, chief deputy coroner for Mississippi County, testified that she was on call on October 12, 2016, and received a call at 7:28 p.m. concerning a deceased person on the front lawn of 102 Parkway in Osceola. She stated that she pronounced the victim, John David Williams, deceased at 7:50 p.m.
Detective Jerry Hamilton of the Osceola Police Department stated that he was called in to help on a large crime scene on October 12, 2016. He said that Williams was lying face down on a four-way lug wrench with a large sum of money in his pocket. He testified that he helped obtain video footage from the victim's home as well as other houses. He said that based on the videos, he was able to see that Williams was changing wheels on his car when the suspects made contact with him in his driveway. Williams ran, and the suspects chased him. He stated that a muzzle blast could be seen before the suspects ran back in the direction from which they came. He testified that he was able to identify a car he knew from prior traffic stops in the videos he obtained as belonging to Mildred and Paul English. He described the vehicle as a black Buick Rendezvous with chrome rims and a "Vote for David Burnett" sign. He stated that in a "10 to 15 minute timeframe, 6:55 to 7:10 p.m., [he saw] the vehicle come in to Magnolia Drive and turns around and comes back out the other way. The same vehicle again does the same thing. The last time it enters, around 7:08, it stays for several minutes. And that fits the timeframe of the murder." Detective Hamilton stated that there was also video footage prior to this time showing the same vehicle going up and down Parkway in front of Williams's house. He continued to describe the video footages and their importance to the murder case.
Harold Weeden testified that he came in contact with appellant on October 12, 2016, after shooting dice on Broadway. He stated that appellant and Zebarious Hawkins were sitting in a Hummer planning the robbery of Williams. Williams was chosen because of a Facebook picture showing him and another person with a lot of money. Weeden said that he and the others smoked marijuana. He testified that Shakur Bingham showed up when they were discussing the robbery and their need for guns. He stated that Shakur had a silver 9-millimeter, so he got in the Hummer with them. He said that they all left the Hummer and got into his vehicle.
Weeden stated that they rode around and went to "stakeout" Williams to see what he was doing. He stated that they went to Bingham's father's house on Parkway and that Williams was putting rims on his car at that time. Weeden testified that they went to Seminole Village and parked in the last circle between two apartment complexes to see how they "were going to approach the situation." They got one gun from Bingham's sister, Rashida. He stated that they then went to Dratashia Wilson's, appellant's girlfriend's, house to get the camouflage suit Hawkins wore along with a Scream mask. He stated that they subsequently went to his house for a change of clothes. He said that by this time, the plan had changed to where he was going to be the one to rob Williams and appellant would be the getaway driver since appellant was the only one with a driver's license. He testified that Bingham's job was to supply the guns. He stated the appellant agreed to be the driver, stating, "Okay, I've just gotta drive, *554 that's it." He testified that they went back to Seminole Village and parked. He stated that he and Hawkins got out of the car and went through the back over a ditch. Weeden said that he had the "two-shooter" and Hawkins had the 9-millimeter. He said they saw Williams changing his tire and that Williams stood up, said "don't shoot me," and took off running. He stated that Hawkins came out of the bushes and started firing his weapon at Williams. He testified that he fled when Hawkins started shooting because that was never part of the plan. He said that he knew Williams because his sister used to date Williams's brother. He testified that when he returned to his vehicle, appellant was in the driver's seat, Bingham was on the passenger side, and that he and Hawkins got in the back. He stated that everyone asked Hawkins why he shot his gun. He said that Bingham's father called and said that Williams was dead over on Parkway. He stated that they drove to his house on East Alfalfa and subsequently split up. He said that he and Hawkins got rid of their clothes but that appellant and Bingham did not change clothes. He testified that they did not get anything from the robbery. Weeden stated that he went back to Jonesboro and called the police to turn himself in. He admitted that he was wrong and would have to serve time for his role in the crime.
On cross-examination, Weeden stated that he had an agreement with the State for fifteen years' imprisonment with five years suspended on the charge of conspiracy to commit first-degree murder.
Raymond Trammel, former detective of the Osceola Police Department, testified that he helped investigate Williams's murder and subsequently obtained arrest warrants for appellant, Hawkins, Bingham, and Weeden. He stated that Weeden turned himself in and cooperated without any offer on the table.
Appellant made a motion for directed verdict after the State rested, contending that there had been no corroborating evidence to indicate that appellant had any involvement in Williams's death other than Weeden's testimony, who was a codefendant. The State responded that corroboration of a codefendant's testimony is not necessary in a revocation proceeding. The court denied the motion, finding that the State had made a prima facie case. The defense rested without putting on evidence and renewed its directed-verdict motion. It argued that the cases holding that corroboration is not necessary in revocations "have either been overruled or are no longer good law, or they should be overruled." The court denied the motion and subsequently found that appellant had violated the terms and conditions of his probation by being an accomplice to capital murder and aggravated robbery. Appellant was sentenced to twenty years' imprisonment. The sentencing order was filed March 5, 2018. Appellant filed a timely notice of appeal on April 4, 2018. This appeal followed.
Pursuant to Arkansas Code Annotated section 16-93-308(d),[1] a circuit court may revoke a defendant's probation at any time prior to the expiration of the period of probation if a preponderance of the evidence establishes the defendant inexcusably failed to comply with a condition of the probation.[2] The State's burden of proof in a revocation proceeding is less than is required to convict in a criminal trial, and evidence insufficient for a conviction at a criminal trial may be sufficient for *555 revocation.[3] When the sufficiency of the evidence is challenged on appeal from an order of revocation, the circuit court's decision will not be reversed unless it is clearly against a preponderance of the evidence.[4] The appellate court defers to the circuit court's superior position in evaluating the credibility and weight to be given testimony.[5]
For his first point, appellant argues that his revocation should be reversed because there was no corroboration of his codefendant's testimony. Our courts have held that the uncorroborated testimony of an accomplice is a sufficient basis for a revocation of probation or a suspended sentence.[6] To the extent that appellant argues that Ellerson should be reversed or overruled, we are without authority to overrule a decision of our supreme court.[7] Accordingly, we find no error.
Next, appellant argues that his revocation should be reversed because the revocation should have been deferred until after the new murder charge was adjudicated. He contends that "[i]f [he] was convicted on those charges, revocation would automatically follow. If, on the other hand, [he] was acquitted on those charges, then the revocation should also be dismissed. In either case, [he] would have been afforded his full panoply of constitutional rights on the new charges." Counsel admits that a similar argument was rejected by this court in 2017.[8] We hold that this argument is not preserved for our review and is being raised for the first time on appeal.
Even if the issue had been preserved, we would affirm. According to Arkansas Code Annotated section 16-93-308(d), a circuit court may revoke a defendant's probation at any time prior to the expiration of that probation. The trial court revoked appellant's probation long before his probation was set to expire. Additionally, the State's burden of proof in a revocation proceeding is less than is required to convict in a criminal trial, and evidence insufficient for a conviction at a criminal trial may be sufficient for revocation. Thus, even if appellant was acquitted in the criminal trial, his probation could still be revoked. Therefore, appellant's argument is without merit.
Affirmed.
Gladwin and Murphy, JJ., agree.

(Supp. 2017).

E.g. , Vangilder v. State , 2018 Ark. App. 385, 555 S.W.3d 413.

Id.

Id.

Id.

E.g. , Ellerson v. State , 261 Ark. 525, 549 S.W.2d 495 (1977) ; Tipton v. State , 47 Ark. App. 187, 887 S.W.2d 540 (1994) ; Collins v. State , 2018 Ark. App. 563, 566 S.W.3d 139.

Christian v. State , 2018 Ark. App. 594, 566 S.W.3d 527.

See Geeslin v. State , 2017 Ark. App. 571, 533 S.W.3d 132.