BILLY RAY DAVIS *v.* STATE OF ARKANSAS

5652                                   475 S.W. 2d 155

Opinion delivered January 17, 1972

*Floyd J. Lofton* and *Richard L. Mays,* for appellant.

*Ray Thornton,* Attorney General; *Gene O'Daniel,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Billy Ray Davis appeals from a conviction of murder in the first degree for which he received a sentence of life imprisonment. He contends that the court erred (1) in instructing on first degree murder and (2) in refusing to grant a continuance.

On the night of March 10, 1971, Kenneth Pederson, in company with Doyle Randy Burleson, attended a basketball game at Barton Coliseum in Little Rock. As the two men left after the game they walked through a fair exhibit barn which was used as an exit and there they were attacked from their rear by a person wielding a hickory post. According to the State's evidence the assailant attacked Pederson by striking a violent blow to the head. Pederson died within thirty-six hours as a result of the attack. Appellant escaped by outrunning

some bystanders who pursued him. Within a few days he was taken into custody. There was no evidence that appellant and deceased had ever met; particularly was there a total lack of evidence that they had ever had a confrontation of any kind with each other. Appellant is a black boy about seventeen years of age and the deceased was a young white technician and instructor at Arkansas Medical Center.

Appellant contends that there was a total lack of evidence of premeditation and deliberation, both being essential elements of first degree murder. The trial court properly defined deliberation as "a weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers." Premeditation, the court said, meant "thought of beforehand. It is immaterial as to just how long premeditation and deliberation exist, but it must exist for a period of time and prior to the homicide." It has also many times been said the necessary elements of premeditation and deliberation may be inferred from the circumstances as shown by the evidence. *Walker* v. *State,* 241 Ark. 300, 408 S. W. 2d 905 (1966). There is another well established rule we follow in resolving the issue before us, that is, we view the evidence in the light most favorable to the State, it being the appellee. *Stanley* v. *State,* 248 Ark. 787, 454 S. W. 2d 72 (1970).

There is not one scintilla of evidence to show that the deceased did anything to arouse the appellant's anger. The weapon selected by appellant is significant. It is a hardwood post about three feet long and tapered on one end. It weighs approximately nine pounds. Appellant pushed one of his friends aside, apparently to enable appellant to get a full swing. The situs on the body which appellant chose to strike is also significant, being the head. The viciousness of the swing of the club was revealed by the physician's testimony. Appellant struck with such force that the brain was lacerated on both sides. The brain was extensively lacerated, with hemorrhages both in the brain substance and on the cover thereof. The brain disintegrated. After striking the

fatal blow appellant threw the post at the friend of the deceased and with such force as to knock him down. Whereupon the appellant fled the scene. The next day appellant went to school. There he was found reading a newspaper "to see if he had killed that man." We are unable to say that the jury was wrong in inferring premeditation and deliberation.

The second and final point for reversal is that the court erred in refusing to grant a continuance. The appellant took the position that since the trial took place some six weeks after his arrest, newspaper publicity given the incident was so intensive and inflammatory that an impartial jury could not have been selected. The record is silent as to any publicity being given the incident of the homicide and of appellant's arrest. Of course we can presume that the two Little Rock dailies carried an account of the incidents but, in the absence of some evidence, we cannot presume that the publicity was intense and inflammatory. In examining the jurors' answers on voir dire we find that many of them had read a newspaper account of the homicide but that they could not recall the details. Very few of them had formed any opinion about the guilt or innocence of the appellant. Appellant complains that he exhausted his peremptory challenges on prospective jurors who had read one or more newspaper accounts. Before he can be heard to complain he would have to show that he was forced to use his challenges on jurors who were in fact disqualified. We have repeatedly held that the mere reading of a newspaper account of an incident does not disqualify a juror for cause. If a juror has so formed an opinion he is still eligible if he can lay that opinion aside. *Rower* v. *State,* 224 Ark. 671, 275 S. W. 2d 887 (1955). There we said:

> While it is true that some of the veniremen said that they had formed tentative opinions based upon newspaper reports or what someone had told them, all who were accepted stated that they could and would be guided solely by the testimony, giving to the defendant the benefit of all doubts that the law defines. There was no error in accepting these men.

It is no longer practicable in an intelligent society to select jurors from a psychological vacuum or from a stratum where information common to the community as a whole is lacking.

For an extensive treatment of the same subject matter see *Glover* v. *State,* 248 Ark. 1260, 455 S. W. 2d 670 (1970).

The same question now before us—pretrial publicity—is found in the case of *Perez* v. *State,* 236 Ark. 921, 370 S. W. 2d 613 (1963). There we said the question of granting or refusing a motion for continuance because of a recent newspaper article addressed itself to the sound discretion of the trial court. We are unable to say the court abused its discretion in the case at bar.

The appellant relies on *Irvin* v. *Dowd,* 366 U. S. 717 (1961). In that case the United States Supreme Court reversed and ordered a second change of venue. Six murders had been committed and great excitement and indignation were aroused from extensive news media coverage, reciting, among other things, that the accused had admitted the murders. At the trial, 268 of the 430 veniremen were excused because they had fixed opinions of the guilt of the accused. Eight of the twelve jurors selected to try the case admitted they thought petitioner was guilty but stated they could render an impartial verdict. The facts in *Dowd* are foreign to the case at bar. In our case the presiding judge "bent over backwards" to see that no juror with a fixed opinion would be seated. After the appellant had exhausted his challenges there was one venireman who indicated that he thought a homicide was committed at the time and place in question. The court granted appellant an extra challenge to assist in getting a fair and impartial jury.

In *Dowd* the court approved substantially the statement we have quoted from *Rowe* v. *State, supra. Dowd* goes ahead to point out that the exception applicable is a situation wherein the build-up of prejudice is prevalent throughout the community and is so established by

the evidence. Clearly the facts in *Dowd* are far removed from the facts in the case at hand.

Affirmed.