Carl FARRIS *v.* STATE of Arkansas

CR 91-202                              826 S.W.2d 241

Supreme Court of Arkansas
Opinion delivered March 9, 1992

*William R. Simpson, Jr.*, Public Defender, by: *Kim Craw-ford*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Carl Farris was convicted

of capital murder, first degree battery and kidnapping, resulting in a sentence of life without parole. By this appeal, involving only the capital murder count, Farris argues two points of error: there was no evidence of premeditation and insufficient evidence to sustain a conviction of capital murder. We affirm the judgment of conviction and for purposes of discussion, treat the two points as one.

In reviewing the sufficiency of the evidence we consider the evidence in a light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989). The evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Gomez* v. *State*, 305 Ark. 496, 809 S.W.2d 809 (1991). We review only the evidence that supports the conviction and do not weigh it against other conflicting proof favorable to the accused. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987).

A person commits capital murder, as defined in Ark. Code Ann. § 5-10-101(a)(4) (1987), if:

> [w]ith the premeditated and deliberated purpose of caus-ing the death of another person, he causes the death of any person.

Premeditation and deliberation may be inferred from the circumstances of the case. *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991). Such circumstances include the character of the weapon used, the manner in which the weapon was used, the nature of the wounds inflicted and the conduct of the accused. *Id*.

Because there is no direct evidence of appellant's guilt we recount the facts in some detail. Frank Givan, a friend of the victim, Danny Hull, testified that appellant was at the Hull home on the afternoon and evening of the murder. He said Hull was working on appellant's truck and the three men were drinking. Hull had a gun in his possession and he produced it for the appellant to examine. The appellant, Hull and Givan rode around for awhile and when they returned Tim McAlister drove up. Givan last saw Danny Hull, McAlister and appellant around 8:30 p.m. at Hull's house. When McAlister left shortly after Frank Givan, Danny Hull and the appellant were still there.

Little Rock Police Officer Richard Kindervater was called at approximately 9:20 p.m. to investigate a shooting at the Hull residence. He found Danny Hull lying face down in the backyard between the car and the house and Teresa Hull, Danny's wife, shot in the hand. Officer Kindervater was given a description of the suspect and secured the crime scene.

Sergeant Danny Burnett testified that he was called to the crime scene. He was given a description of the suspect and told to go to the hospital to take a statement from Teresa Hull. As he was driving to the hospital he saw a man fitting the description of the suspect. He took the suspect into custody and could see blood on his clothing and face.

Ronnie Smith, a homicide investigator for the Little Rock Police Department, testified that as lead investigator he surveyed the crime scene, interviewed witnesses and collected blood samples from Danny Hull, the appellant and Teresa Hull. He testified that Danny Hull was lying on the ground and his shirt was pulled over his head as if someone had dragged him. Officer Smith described appellant as having blood on his clothing, face and right hand. Smith sent appellant's clothing to the crime lab for analysis. Officer Smith testified that he performed a gunshot test on the appellant and took his fingerprints the night of the murder and sent them to the crime lab. Smith testified the murder weapon, a .22 Remington, was found approximately a block from the crime scene and it had been thrown through a church window.

Dr. Fahmy Malak explained the results of the autopsy he conducted on Danny Hull. Hull's hands were coated with grease and mud and Hull had been shot three times from behind: Once in the left shoulder, once in the back of the head, and once in the neck. Bullets were retrieved from the head and larynx. Dr. Malak confirmed that Hull's death was attributable to either the wound to the head or the neck.

Berwin Moore, firearms and explosive analyst for the Arkansas Crime Lab, testified that he test-fired the murder weapon and collected the bullets. The samples matched the bullets removed from the victim's head and neck.

Lisa Sakevicius of the Arkansas State Crime Lab analyzed the gunshot residue kit, reflecting that appellant either dis-

charged a firearm, was in close proximity to the discharge of a firearm or handled a recently discharged firearm.

Barbara Polite, a crime scene technician for the Little Rock Police Department, testified she dusted the truck at the Hull residence for latent fingerprints and collected blood samples from it. Ann McClain, latent fingerprint examiner for the Little Rock Police Department, testified that she received latent fingerprint cards from Barbara Polite. She compared the cards to the appellant's fingerprint and found them to match.

Jane Parsons, a serologist at the Arkansas State Crime Lab, testified that she found the victim's blood on the clothing and right shoe taken from the appellant.

Cynthia Driscoll, the victim's next door neighbor, testified to seeing appellant at the victim's house the evening of the murder. She testified that Teresa Hull and her children were visiting at her house that evening. Driscoll stated that Teresa Hull and her son, Josh, left at approximately 9:00 p.m. and about ten minutes later Josh returned screaming that his mother was being shot. When Driscoll asked Josh who was shooting her he replied, "The guy that my daddy was fixing the truck for." Driscoll immediately ran to a store and called 911.

Another neighbor, Kevin Mallot, testified that Josh came to their home screaming that someone was shooting at his mother. When Mallot went next door Teresa Hull ran out and he saw the appellant behind her with a gun. Mallot said the appellant ran in the direction of Scott Hamilton Road toward the church where the murder weapon was found.

Teresa Hull testified that the appellant was with her husband as he worked on appellant's truck the day of the murder. She left to visit next door at about 8:00 p.m. and returned with Josh about an hour later. She heard a vehicle pull up in her drive and saw the appellant walking toward her porch with her husband's gun in his hands. Teresa testified she reached for the gun and appellant shot her in her right hand. She struggled with the appellant and the gun fired again. Appellant put the gun to her head and said, "Shut up, bitch. I will shoot you right here." When Teresa asked where Danny was, appellant told her not to worry about Danny because he had "already taken care of him." Teresa

ran toward the Mallot home just as Kevin Mallot was coming to investigate.

■ That evidence, viewed in a light favorable to the state, fully meets the requirement of substantiability.

■■ As to the matter of premeditation, appellant argues there is no evidence that Danny Hull was killed deliberately. He submits there are no eyewitnesses, no direct evidence and no circumstantial evidence from which to determine a culpable state of mind by the accused. All of which may be true, but we have said repeatedly that premeditation and deliberation may be inferred from the circumstances established by the evidence. *Davis* v. *State*, 251 Ark. 771, 475 S.W.2d 155 (1972). Here, cognizant of circumstances in their entirety, and noting that Danny Hull was shot three times from behind, we conclude that evidence of premeditation is not lacking.

Pursuant to Rule 11(f) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, and pursuant to A.R.Cr.P. Rule 36.24, an examination of the complete record has been made for any prejudicial error which may have been objected to below, but not argued on appeal.

For the reasons stated, the judgment appealed from is affirmed.