Darren Jerome CRAWFORD *v.* STATE of Arkansas

CR 91-248                                              827 S.W.2d 134

Supreme Court of Arkansas
Opinion delivered March 30, 1992

*Durrett & Coleman*, by: *Gerald A. Coleman*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Darren Jerome Crawford urges this court to reverse his conviction of first-degree murder for which he received a sentence of life imprisonment. Because of a number of prior convictions, appellant was sentenced as an habitual offender. On appeal, appellant claims the evidence was insufficient to support the first-degree murder conviction. He also claims that the trial court erred in allowing the state to cross-examine a defense witness about a prior inconsistent statement that the court had previously ruled inadmissible. We affirm.

Appellant's first and second arguments challenge the sufficiency of the evidence at the close of the state's case and at the close of all the evidence, respectively. In *Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992), we recently held that a defendant who goes forward with the production of additional evidence after a directed verdict motion is overruled, waives any further reliance upon the former motion. Consequently, we decide appellant's challenge to the sufficiency of evidence as the evidence existed at the close of the case. *Id*.

We must affirm if we find substantial evidence to support appellant's conviction. *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991). In determining whether there is substantial evidence, we consider only the evidence that is favorable to the state and supports appellant's conviction. *Id*.

The following evidence was produced at trial. On July 23, 1989, Crawford and two companions, Marlon Malone and Hosea Chestnut, visited the home of Peggy Felton on two occasions. Unica Felton, Peggy Felton's daughter, who was 13 at the time, testified that her mother was not at home on either occasion, but that her grandmother was at the house during the first visit. Unica informed the men that her mother was not home, and they told Unica they would come back later. The men returned in approximately an hour, after the grandmother had left. Unica Felton, her infant brother, and Jessica King, 17, were in the house when the men returned.

The men brought a gun in a paper sack on their return visit to

the house. Marlon Malone testified that the gun belonged to Crawford, and that they had picked the gun up at a friend's house after the initial visit to the Felton home. Crawford instructed Malone to bring the gun into the house. Crawford and Malone went into the bedroom occupied by Jiles, and Malone left the bedroom while Crawford stayed in the room with Jiles. A few minutes later, a shot rang out, and Crawford came out of the bedroom saying that he shot Jiles and that it was an accident. Hosea Chestnut called an ambulance, and Unica Felton testified that Crawford, Malone, and Chestnut left the house within two to three minutes of the shooting. After leaving the house, Crawford, Malone, and Chestnut drove to Chicago, Illinois.

Crawford and his companions had left when Officer James Liggett arrived at the Felton home to investigate the shooting. Officer Liggett and another officer discovered Jiles in considerable pain in the back bedroom. Liggett noted that Jiles had been shot once in the right rib cage, and that a live .357 shell was laying on the floor. Liggett testified that he asked Jiles what happened, and Jiles informed him that he had been shot by Darren Crawford. Liggett further testified that Jiles stated that he was asleep when Crawford shot him. Jiles died later that afternoon.

■ Appellant argues that the evidence is not sufficient to prove that he acted purposefully in causing the death of John Jiles. We have noted that intent may be inferred from the circumstances of the case. *Farris* v. *State*, 308 Ark. 561, 826 S.W.2d 241 (1992); *Smith, supra.* Such circumstances include the character of the weapon used, the manner in which it was used, the nature of the wounds inflicted and the conduct of the accused. In *Farris*, we recently affirmed the defendant's capital murder conviction even though the state presented no eyewitnesses, no direct evidence from which to determine a culpable state of mind. We relied on the rule that premeditation and deliberation may be inferred from the circumstances established by the evidence. *Farris, supra; Davis* v. *State*, 251 Ark. 771, 475 S.W.2d 155 (1972).

In this case, the evidence established by the circumstances was sufficient for the jury to infer that Crawford acted purposefully in killing John Jiles. Particularly important in this case is the fact that appellant used a gun to kill Jiles while Jiles was asleep.

Also compelling is appellant's conduct in returning to the Felton home immediately after retrieving a gun and his immediate flight from the state after the shooting, during which time he disposed of the gun.

■■ From the foregoing circumstances, the jury could logically conclude that appellant acted purposefully. Appellant repeatedly stresses all of the evidence tending to support his theory of an accidental shooting. However, in sufficiency of the evidence challenges, we review only the evidence that supports the conviction and do not weigh it against other conflicting proof favorable to the accused. *Farris, supra; Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987). As we find sufficient evidence of appellant's intent, we affirm the trial court's denial of a directed verdict.

Appellant's third allegation of error is that the trial court erred in allowing the state to cross-examine defense witness Hosea Chestnut about a prior inconsistent statement.

In Chestnut's original statement to the police, he stated that he and his companions went to Peggy Felton's home on July 23, 1989, to "drop some weed off." The trial court granted appellant's motion in limine to exclude the testimony. On direct examination, Chestnut gave the following testimony:

BY MR. COLEMAN:

Q. Do you remember the day that Bay-G was shot, John Jiles?

A. Yes, sir.

Q. Were you there?

A. Yes, sir.

Q. When did you get to that house?

A. About 1:00, 2:00, July 23rd.

Q. Could you tell us what happened?

A. We went there to—see, I was on parole and we was taking a gun up to Chicago for protection, right. *I told Red I couldn't ride with no gun. So he was going to drop it off at Peggy's house to see would she keep it for us 'til we got*

*back.*

We went over there and Peggy wasn't there the first time. Her mother was there. So we come back, you know, and we decided to leave it there with Jessica and Unica and we was going to take off. [Emphasis added.]

At the conclusion of Chestnut's direct examination, the trial court granted permission to the state to cross-examination Chestnut about his prior statement that the men went to Felton's home to "drop some weed off." Following the state's cross-examination of Chestnut, the trial court instructed the jury that evidence of a witness' prior statement should only be considered for the purpose of judging the witness' credibility and should not be considered as substantive evidence.

Appellant objected to the trial court's ruling on grounds that it would be unfair to develop a line of questioning about the statement since Chestnut had been told he could not mention anything about dropping the weed off.

■ A witness' prior inconsistent statement is admissible under A.R.E. Rule 613 for impeachment purposes. *Laymon* v. *State*, 306 Ark. 377, 814 S.W.2d 901 (1991); *McDaniel* v. *State*, 291 Ark. 596, 726 S.W.2d 679 (1987); *Chisum* v. *State*, 273 Ark. 1, 616 S.W.2d 728 (1981). Under A.R.E. Rule 105, whenever evidence is admissible for one purpose but not admissible for another purpose, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. In this case, the judge's limiting instruction properly restricted the challenged evidence to its proper scope.

■ While the appellant objects to the admission on grounds that it was "unfair," the afore-transcribed exchange reveals that the witness volunteered the inconsistent information upon being asked the general question "What happened?" The state was not even questioning the witness at the time he volunteered the information, and we see no unfairness in allowing the state to impeach his credibility by showing that he previously gave contradictory information.

Accordingly, appellant's conviction is affirmed.