Anthony KEY *v.* STATE of Arkansas

CR 96-121                                        923 S.W.2d 865

Supreme Court of Arkansas
Opinion delivered June 17, 1996

*Didi H. Sallings*, Executive Director, by: *Teri Chambers*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Anthony Key, appeals a judgment of the Pulaski County Circuit Court convicting him of capital murder and sentencing him to life imprisonment without parole. Jurisdiction of this appeal is properly in this court. Ark. Sup. Ct. R. 1-2(a)(2). Appellant presents three arguments for reversal of the judgment entered pursuant to a jury verdict. We find no merit to the arguments and affirm.

Appellant's first argument for reversal is that the trial court erred in denying his motions for directed verdict. At trial, appellant moved for a directed verdict at the close of the state's case, contending the state had not proven that appellant acted with the premeditated and deliberated purpose of causing a person's death. Appellant presented defense witnesses and then renewed the motion for directed verdict at the close of his evidence, adding as additional grounds that he was incapable of forming the requisite mental state. Appellant then renewed the motion at the close of the state's rebuttal evidence and again at the close of his surrebuttal evidence.

Appellant's initial motions were sufficiently specific to apprise the trial court of the particular evidence he claimed was lacking. The renewal motions were likewise sufficient to preserve the argument for our review. *Heard* v. *State*, 322 Ark. 553, 910 S.W.2d 663

(1995); *Durham* v. *State*, 320 Ark. 689, 899 S.W.2d 470 (1995). Although appellant asks us to review the evidence as it existed both at the close of the state's evidence and again at the close of the case, appellant waived his former motion for directed verdict by presenting evidence in his defense. Therefore, we decide his challenge to the sufficiency of the evidence as the evidence existed at the close of the case when he renewed his former motions. *Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992).

■ In reviewing the sufficiency of the evidence, we consider the evidence in a light most favorable to appellee and affirm if there is substantial evidence to support the verdict. *Nance* v. *State*, 323 Ark. 583, 918 S.W.2d 114 (1996). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* We consider only the evidence that supports the conviction without weighing it against other evidence favorable to the accused. *Farris* v. *State*, 308 Ark. 561, 826 S.W.2d 241 (1992). Circumstantial evidence alone may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Nance*, 323 Ark. 583, 918 S.W.2d 114. Once the evidence is determined to be sufficient to go to the jury, the question of whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the jury to decide. *Hadley* v. *State*, 322 Ark. 472, 910 S.W.2d 675 (1995); *Missildine* v. *State*, 314 Ark. 500, 863 S.W.2d 813 (1993); *Lolla* v. *State*, 179 Ark. 346, 15 S.W.2d 988 (1929).

Because appellant does not dispute that he killed the victim, we need not recite the evidence in great detail. Suffice it to say that appellant shot and killed Lisa Williams as she was looking out the window of her trailer following an argument she had with appellant's sister. The only issue we need determine is whether there is substantial evidence to support a finding that he acted with the premeditated and deliberated purpose of causing death.

■ As applied to this case, a person commits capital murder if, "[w]ith the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person[.]" Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1993). Premeditation and deliberation are not required to exist for any particular length of time and may be formed in an instant. *Ward* v. *State*, 298 Ark. 448, 770 S.W.2d 109 (1989); *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3,

*cert. denied*, 459 U.S. 1022 (1982). Premeditation and deliberation may be inferred from the circumstances of the case, which include the type and character of the weapon used, the manner in which the weapon was used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused. *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996); *Farris*, 308 Ark. 561, 826 S.W.2d 241.

The type of weapon used was a 12-gauge shotgun. As for the character of the weapon, appellant described it in his statement as being sawed-off at both ends. Three 12-gauge shell casings were recovered at the scene. Investigating officers described the shell casings as being mag load, double-00 buckshot, two and three-quarter inch. The officers estimated that the victim fell backward six feet from the window where she was looking outside when she was shot. According to the associate medical examiner, she suffered eleven entrance wounds from a single shotgun blast that caused multiple penetrations and perforations of her head, neck, chest, and right arm.

Willie Williams, the victim's husband, testified that he and his wife were at home in their trailer when they heard a gunshot. He stated that they went to the doorway and saw appellant shooting at the trailer next door. He then saw appellant turn and shoot in their direction, with the shot hitting the corner of the doorway where they stood. Mr. Williams stated that his wife then went to the bedroom while he remained near the doorway and called 911. He testified that, while still on the phone to 911, he saw appellant moving closer to their trailer in their direction. He stated that when he went to the bedroom he saw his wife looking out the corner of the window; he then heard another shotgun blast and she fell backwards.

A total of five shots were fired at the scene. One shot hit the trailer next to the Williamses', and one shot hit the Willliamses' car. Three shots hit the Williamses' trailer, one on the north side near the doorway where the Williamses stood when they heard the first shot, and two at the west end near the corner of the window where the victim was looking outside. One of these hit above the window and the other hit the corner of the window. Photographs of the crime scene indicated that the shot that hit near the doorway and the shot that hit the corner of the window were both fired at head level.

On appeal, appellant's argument is twofold. First, he argues that the number and scattering of the blast patterns indicate he acted with an intent to scare or to cause property damage, rather than to kill the victim. Second, he argues that he was incapable of forming the mental state of premeditated and deliberate purpose to kill because, given the quick period of time between the argument and the homicide, he was unable to weigh consequences in his mind and to cope with the stress of the fight between his sister and the victim. In support of this argument, appellant relies on testimony from Charlotte Bull, appellant's former special education teacher; Drew Camp, a licensed psychological examiner for the North Little Rock School District; and Dr. James Moneypenny, a psychologist. Collective testimonies of these three witnesses revealed that appellant had an IQ of 72, which borders on the mildly-mentally-retarded range, and was reading at the third-grade level when he quit school approximately two years prior to the homicide; that he had diminished reasoning abilities when under stress; and that he had difficulty developing coping skills. Dr. Moneypenny opined that, given appellant's lack of abilities and the stress of his sister being involved in a fight, appellant was functioning under a diminished capacity on the date of the homicide. He also testified that the fact that the gunshots were scattered and disorganized was consistent with his opinion of appellant's diminished capacity.

We are convinced there was substantial evidence from which a jury could very easily conclude, without speculating, that appellant acted with a premeditated and deliberated purpose to cause the death of Lisa Williams. In short, appellant used a sawed-off, 12-gauge shotgun loaded with double-00 buckshot in March; the shots were fired into the trailer at head-level; and the shots appeared to have been aimed at a certain target as they followed the victim when she moved from the doorway of her home to the bedroom. It was for the jury to determine that this evidence excluded every other hypothesis consistent with appellant's innocence, and they could do so on this evidence without speculating. The jury was not persuaded by appellant's evidence. This was a credibility determination by the jury that we affirm upon substantial evidence. Accordingly, we find no merit to appellant's first argument.

Appellant's second argument for reversal is a challenge to

the trial court's finding that appellant was fit to proceed to trial. Ordinarily, a criminal defendant is presumed to be mentally competent to stand trial, and the burden of proving incompetence is on that defendant. *Mitchell* v. *State*, 323 Ark. 116, 913 S.W.2d 264 (1996). The test for determining an accused's competency to stand trial is whether he is aware of the nature of the proceedings against him and is capable of cooperating effectively with his attorney in the preparation of his defense. Ark. Code Ann. § 5-2-302 (Repl. 1993); *Mitchell*, 323 Ark. 116, 913 S.W.2d 264. On appellate review of a finding of fitness to stand trial, we affirm if there is substantial evidence to support the trial court's finding. *Id.* at 121, 913 S.W.2d at 266 (quoting *Mauppin* v. *State*, 314 Ark. 566, 865 S.W.2d 270 (1993).

Appellant argues that, because he told the examiner at the state hospital that he was charged with first-degree murder when he was actually charged with capital murder, he was not aware of the nature of the charges against him. He argues further that he had a significant history of poor communication abilities, thus he could not assist in his defense. Following the filing of appellant's notice pursuant to Ark. Code Ann. § 5-2-304 (Repl. 1993) and motion for evaluation, the trial court entered an order committing appellant to the state hospital for examination. Dr. O. Wendall Hall, a psychiatrist at the state hospital, filed a report with the court finding that appellant appeared to be aware of the nature of the charges and the proceedings taken against him and was capable of cooperating effectively with an attorney in the preparation of his defense.

The trial court later held a competency hearing and heard testimony from Drew Camp, a licensed psychological examiner in the North Little Rock School District; Dr. Albert Kittrell, a fourth-year psychiatry resident at the state hospital; and Dr. Susan Doi, a clinical psychologist at the state hospital. Collectively, their testimonies established that appellant had an IQ of 72, which is on the borderline of mild mental retardation; that various tests of language skills, motor skills, and behavior skills indicated appellant functioned at an equivalent age of ten to twelve years; that while in the eleventh grade he functioned at the third-grade level in all areas except math, in which he functioned at the fifth-grade level; that appellant had no problems functioning in the social environment at the state hospital; that appellant was fairly poor in both judgment and insight; that appellant showed no evidence of major mental

illness or psychotic behavior; and that appellant was aware of the charges and could assist in his own defense.

■ The law does not require an accused to identify with specificity the charges filed against him. Rather, section 5-2-302 requires that an accused have the capacity to "understand the proceedings against him." Both doctors from the state hospital testified that appellant knew he had been charged with murder. They both concluded that appellant was aware of the nature of the charges against him. In addition, both doctors testified that he cooperated in their examinations and with others at the state hospital. Again, both doctors stated appellant could assist in his defense. Their testimonies constitute substantial evidence to support the trial court's conclusion that appellant was competent to stand trial.

Appellant's third argument for reversal is that the trial court erred in refusing to suppress appellant's pretrial statement, wherein he admitted to firing the shotgun at the Williamses although he did not intend to kill anyone. Appellant contends his waiver of *Miranda* rights was not voluntary, knowing, or intelligent because the interrogating officer made a false promise to send appellant home if appellant would admit to being the shooter. He argues that persons of ordinary intelligence would not be induced to confess on such an obviously false promise and that his low intelligence and lack of education rendered him extremely vulnerable.

■ When the voluntariness of a confession is in issue, we make an independent determination of voluntariness based upon the totality of the circumstances surrounding the confession, and we do not reverse the trial court's finding of voluntariness unless it is clearly against the preponderance of the evidence. *Misskelley* v. *State*, 323 Ark. 449, 915 S.W.2d 702 (1996). Some of the factors we consider are the age, education, and intelligence of the accused; the advice or lack thereof on constitutional rights; the length of the detention; the repeated or prolonged nature of the questioning; and the use of physical punishment. *Id.* A custodial confession is presumed involuntary and the burden is on the state to show the confession was voluntarily made. *Id.*

■ A confession obtained through a false promise of reward or leniency is invalid. *Id.* However, the only evidence that appellant's custodial statement was obtained through a false promise of reward comes from appellant's testimony at the suppression hearing.

In his statement, however, he clearly stated that the detective advised him of his *Miranda* rights in a manner that he understood, that no one had made any threats or promises in exchange for the statement, and that he was giving the statement "of [his] own free will." Thus, this is a credibility issue that the trial court assessed in favor of the state. *See Misskelley*, 323 Ark. 449, 915 S.W.2d 702.

■ While the factors of age and mental capacity are factors to consider in determining voluntariness of a confession, those factors alone are not sufficient to require suppression. *Misskelley*, 323 Ark. 449, 915 S.W.2d 702. In addition, a low score on an intelligence quotient test does not render an accused incapable of voluntarily giving a confession. *Id.* The facts of *Misskelley* are almost identical to the facts of this case. Misskelley was aged seventeen when he was interrogated, had an IQ of 72, and read at the third-grade level. In the present case, appellant was aged eighteen when he was interrogated, had an IQ of 72, and read at the third-grade level. We found Misskelley's confession to be voluntary. Likewise, we find appellant's to be voluntary. On this evidence, we cannot say the trial court's finding of voluntariness was clearly against the preponderance of the evidence.

In accordance with Rule 4-3(h), the record has been reviewed for adverse rulings objected to by appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.

DUDLEY, J., not participating.