Stephen V. PASCALE *v.* STATE of Arkansas

CA CR 98-259                                      984 S.W.2d 87

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered January 20, 1999

*Lynn Frank Plemmons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

OLLY NEAL, Judge. After a jury trial, Stephen Pascale was convicted of driving while intoxicated, fourth offense, refusing to submit to a breathalyzer test, operating a vehicle during a suspended license, and speeding. On appeal, he contends that the trial court erred in finding him competent to stand trial when an additional breathalyzer test should have been administered. We disagree and therefore affirm.

At the pretrial hearing, appellant's counsel advised the court that he had been informed that appellant was possibly intoxicated. Counsel moved for a continuance, claiming that appellant's alleged physical state might affect his competency to testify and that appellant's testimony was necessary in assisting in his defense. The prosecuting attorney objected to a continuance, stating that appellant had violated a condition of his bond and should be incarcerated until trial. The court instructed a state trooper to administer a portable breathalyzer test and found that appellant tested positive for alcohol consumption. Appellant admitted that he had consumed more than one alcoholic beverage on the morn-

ing of the hearing, but stated that he had worked in a pasture until two o'clock that morning. Appellant's counsel indicated that there was not sufficient evidence to find that appellant was under the influence of alcohol and requested that an additional breathalyzer test be given.

The following colloquy occurred at the pretrial hearing:

> THE COURT: Mr. Pascale, do you feel you're competent to proceed?
>
> STEPHEN PASCALE: Yes, I do.
>
> THE COURT: And can you testify?
>
> STEPHEN PASCALE: I believe so, to the best of my ability.
>
> THE COURT: You don't feel you're impaired by alcohol?
>
> STEPHEN PASCALE: No.

In light of appellant's testimony, the court determined that appellant was competent to proceed with the trial. During the State's case-in-chief, the court overruled defense counsel's objection to appellant testifying about his ability to recall what happened on the night of his arrest. Appellant admitted that he was able to recall the events that took place on February 9, 1997, and that he didn't believe that he was intoxicated at the time of trial.

Appellant contends that an additional breathalyzer test should have been administered once it appeared to the court that he was possibly intoxicated. On appellate review of a finding of fitness to stand trial, we affirm if there is substantial evidence to support the court's finding. *Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996). We have often stated that competency for purposes of a defendant's ability to stand trial is whether he is aware of the nature of the proceedings against him and is capable of cooperating effectively with his attorney in the preparation of his defense. *Key v. State, supra; Jones v. State*, 317 Ark. 131, 876 S.W.2d 262 (1994); *Mauppin v. State*, 314 Ark. 566, 865 S.W.2d 270 (1993). A defendant in a criminal case is ordinarily presumed to be mentally competent to stand trial, and the burden of proving

incompetence is on that defendant. *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996).

Appellant argues that this case is distinguishable from *Meekins v. State*, 34 Ark. App. 67, 806 S.W.2d 9 (1991). In *Meekins*, the appellant moved for a continuance on the ground that he had registered .19 on the breathalyzer test, which would, in turn, cause him to be unable to assist in *voir dire* and proceed with trial. The court, however, denied the motion and found that appellant was competent to stand trial. The denial of the motion was based on the testimony of two officers who opined that they had interacted with appellant and had found him to be coherent of the proceedings.

In the case at bar, appellant argues that the only witness who testified regarding his intoxication was Arkansas State Trooper Richard Lewis, who testified that appellant had registered positive for the presence of alcohol on a portable breathalyzer test. However, the record reflects that appellant admitted at the pretrial hearing and at trial that he was able to understand the charges against him. During cross-examination, he testified that he had taken care of several sick cows until daybreak and that he had eaten breakfast before court. Appellant's counsel never argued to the court that appellant was intoxicated, but rather requested that an additional breathalyzer test be given. Further, the record reflects that appellant made no requests for an additional breathalyzer examination once trial had proceeded.

Although the dissent notes that there was uncontroverted proof that appellant smelled of alcohol on the morning of his trial, this court recently acknowledged that the odor of intoxicants and appellant's involvement in a one-car accident are not substantial evidence of intoxication. *See Stivers v. State*, 64 Ark. App. 113, 978 S.W.2d 749 (1998). In this case, other than the smell of alcohol and the results from the portable breathalyzer test, there was no evidence presented to show that appellant had glassy eyes, slurred speech, or any other indicia of intoxication to show a lack of fitness to stand trial.

■    Based on the evidence presented, we find that there was substantial evidence that appellant could assist in his defense, and we further hold that the court did not err in refusing a further examination.

Affirmed.

MEADS and ROAF, JJ., agree.

STROUD and CRABTREE, JJ., concur.

GRIFFEN, J., dissents.

JOHN F. STROUD, JR., Judge, concurring. I concur with the result reached in the majority opinion because I am compelled to do so by the precedent set in *Meekins v. State*, 34 Ark. App. 67, 806 S.W.2d 9 (1991). In *Meekins*, the defendant registered .19 on a breathalyzer test just prior to his trial for the offense of delivery of a controlled substance. After hearing the testimony of two police officers, who had talked with the appellant just prior to the trial, the trial court denied Meekins's request for a continuance, finding that he was able to understand the proceedings.

Here, just prior to appellant's trial for fourth-offense DWI, it was brought to his counsel's attention that appellant smelled of alcohol. Counsel alerted the court and asked for a continuance because he needed the competent testimony of appellant, explaining that "we don't have a case without his testimony." The judge said, "I think a portable breath test would be adequate and, if it appears that he is intoxicated according to that, he can have a breath test at the jail." A portable breathlyzer test showed that appellant had a blood-alcohol content of .14. Counsel asked the court to have the more accurate breathalyzer test given. The judge stated that upon a continuance, appellant's bond would be revoked and he would be held in jail until his trial. The judge also stated, "Mr. Pascale, you've brought this upon yourself, by coming to my court intoxicated." After a conference between the appellant and his counsel, his counsel said that appellant was ready to go to trial. The trial court then asked appellant a series of questions concerning his competency to proceed with the trial. Appellant

responded that he was competent to proceed, would be able to testify, and did not feel impaired by the alcohol. The trial court proceeded with the trial.

I think appellant's response was obviously based on the certainty of his incarceration if a continuance were granted. In spite of appellant's testimony that he did not feel impaired, I think the results of the breath test together with his admission during cross-examination that he had consumed five or six beers before coming to the courtroom on the morning of trial are sufficient reasons for the trial to be postponed. I would reverse and remand this case were it not for the precedent set by the *Meekins* case.

TERRY CRABTREE, Judge, concurring. I join in the majority opinion but write separately to articulate my view that the standard for competence to stand trial is separate and distinct from the test used to determine one's ability to drive a car.

The General Assembly enacted the Omnibus DWI Act in an attempt to reduce the number of deaths and injuries resulting from drunk drivers on our state's highways. It is beyond dispute that this is a legitimate state interest and that there is a rational basis for the legislation. When a person is driving, he is in complete control of a vehicle weighing thousands of pounds and often going at high rates of speed. The driver must be able to respond immediately to emergency situations and must be able to make split-second decisions with all his ability to avoid loss of life or serious injury.

The General Assembly has attempted to reduce the slaughter on our highways by making it unlawful to drive a motor vehicle if the driver is impaired or if the driver registers a blood alcohol level of .10 or higher. In enacting the legislation, the General Assembly determined that .10 was an appropriate standard to use to determine if a person was impaired to any degree. Necessarily, the statute is general in nature attempting to prohibit activity in the largest part of society in an attempt to safeguard its citizens.

The judiciary does not have the luxury of applying its findings in a general manner and must decide cases on an individual

basis as they come before the court. That is what occurred in this case. The trial judge, rather than make a finding, contrary to statute, that anyone with a blood alcohol level of .10 or more is impaired, made a finding that the appellant in this case was competent to stand trial. I simply cannot equate the driving test of impairment *or* the .10 standard with the test of whether or not an appellant was competent to stand trial. Competency is a matter for the trial court to determine and in this case, the trial court had the opportunity to observe the appellant before, during, and after trial.

Even though the trial court used words such as intoxicated, it is understandable in light of the definition contained in our DWI statute and the development of its use over the years. The fact that the trial court proceeded on with the trial indicates that it felt the appellant was competent. In *Meekins v. State*, 34 Ark. App. 67, 70, 806 S.W.2d 9, 11 (1991), we stated:

> We find no merit in appellant's argument that, because his blood alcohol level exceeded .10, we must conclude, based on Ark. Code Ann. 5-65-103 (1987), that he was too intoxicated to stand trial. That section provides that it is unlawful for any person to operate a motor vehicle if his blood alcohol level is .10 percent or more. It does not declare or imply that a person in such condition is incompetent for any other purpose.

In my opinion, the same analysis still applies.

My only concern in this case is the concern expressed by Chief Justice Jesson in *Burradell v. State*, 326 Ark. 182, 931 S.W.2d 100 (1996). In the *Burradell* case, the appellant appeared in municipal court intoxicated and was summarily held in contempt. Justice Jesson stated, "Further, the validity of the proceedings could be called into question by the participation of an intoxicated defendant." 326 Ark. at 185, 931 S.W.2d at 102. To me, the better practice for the trial court in this case would have been to find the appellant in contempt and continue the trial. The court was clear in *Burradell* that appearing in court intoxicated was punishable by criminal contempt. Even though this method would preserve the integrity of the court, it does not give the trial court the

luxury of making time for an additional trial because a defendant appears drunk.

In this case, the appellant argues that the trial court committed error by forcing the appellant to trial because he was intoxicated at the time. The record does not indicate that the appellant was not coherent. In fact, from the record, it appears that the appellant was capable of recalling the events of the night of his arrest and relating them to the court. The appellant fails to show anything that would indicate he was unable to assist in his defense or understand the nature of the proceedings. The trial court was able to hear and see the appellant, and this court was not. I defer to the superior position of the trial court and would affirm.

WENDELL L. GRIFFEN, Judge, dissenting. One cannot find a reported case where the venire person, after appearing for jury duty smelling of alcohol and admitting to having consumed five or six beers before coming to court, has been allowed to serve on a jury simply because he did not "feel impaired by alcohol." Somehow, our sense of justice is offended by the idea of evidence being weighed by people who have consumed intoxicants within hours of such serious work. It is equally offensive to contemplate that a trial attorney or judge would participate in a trial after having consumed intoxicants. Although lawyers and judges may know or suspect that a lawyer or judge is impaired, one cannot find a reported case where a lawyer or judge has admitted to consuming intoxicants before a trial, smelled of alcohol, and was permitted to proceed over stated concerns about the propriety of doing so.

Therefore, I am bewildered, to put it mildly, by the decision announced in the majority opinion. According to the uncontroverted proof, on the day of his jury trial on charges of driving while intoxicated (fourth offense), refusing to submit to a breathalyzer, operating a vehicle while having a suspended license, and speeding, Stephen Pascale appeared smelling of alcohol. Pascale's attorney informed the trial judge that:

> several people have mentioned to me that Mr. Pascale has an odor of intoxicants about him. That raises a concern that he is compe-

tent to testify. I need his testimony as part of the case. Mr. Pascale is upset with me for bringing this to the Court's attention, but as an officer of the Court, I believe ethically I had no choice. I need his testimony and he might not be competent to testify. I ask for a continuance.

Although the prosecution did not join in the motion for a continuance, the prosecuting attorney urged the trial court to order Pascale incarcerated until trial for having violated a condition of his bond. That argument amounted, at minimum, to a tacit concession by the prosecution that Pascale's right to a fair trial would be adversely affected by proceeding to trial as planned.

After the trial court directed a state trooper to administer a portable breathalyzer that produced positive results for alcohol consumption (Pascale registered .14 on the portable breathalyzer test), the trial judge said:

He's going to jail until we have this trial. The only question is whether to continue the trial from today. I believe that while it will be inconvenient, it would probable (*sic*) be the best solution to reset the trial for Thursday [December 11, 1997]. Mr. Pascale has violated the conditions of his bond and his bond will be revoked. He will be held in custody until trial.

*Pascale later admitted that he consumed "a couple of brews" before coming to court that day.* Then the abstracted record indicates that the following colloquy occurred:

THE COURT: Mr. Pascale will be held in custody until we have this trial. Our next setting is January. Otherwise we can have the trail (*sic*) Thursday morning.

PASCALE: There's no way I can ask you to reconsider that?

THE COURT: *You've brought this upon yourself by coming to Court intoxicated.* [Emphasis added.]

DEFENSE COUNSEL: I do not believe a PBT [portable breathalyzer test] is an accurate instrument at quantifying alcohol in a person's blood. Mr. Pascale may not be under the influence. Before we take the extraordinary step of having him incarcerated, I request that he have a more accurate test. [*To Defendant*]: Do you agree with that?

PASCALE: Yes.

PROSECUTOR: Either he's intoxicated and his counsel feels he can't help in his defense, or he's not intoxicated. If counsel wants to visit with him and if he thinks he's competent to put him on the stand today, fine. Or let's excuse these jurors and let them go and we'll try Thursday.

THE COURT: Mr. Pascale, do you feel you're competent to proceed?

PASCALE: Yes, I do.

THE COURT: And you can testify?

PASCALE: I believe so, to the best of my ability.

THE COURT: You don't feel you're impaired by alcohol?

PASCALE: No.

THE COURT: Let's proceed.

The trial then commenced. The State presented its case. Pascale took the witness stand to testify in support of his defense. During cross-examination by the prosecutor, the abstracted record shows that the following exchange took place:

PROSECUTOR (*At the bench*): Your Honor, based upon what went on this morning and based on his statements, I think I'm justified in asking him if he's under the influence of anything that would affect his ability to recall what happened [the night of the arrest].

DEFENSE COUNSEL: I have studiously avoided asking him any question that would require him to testify regarding alcohol that he may have consumed in the last twenty-four hours.

PROSECUTOR: That doesn't matter. *This goes strictly to his competence to testify.* He's talked about how he was up and working and I think that it comes in. [Emphasis added.]

THE COURT: I agree.

DEFENSE COUNSEL: I object.

PASCALE (*testifying on cross-examination by the prosecutor*): I'm not under the influence of anything that would affect my ability to recall what happened February 9, 1997 [the night of his arrest].

I had to get up this morning and take care of some sick cows about 3:30 a.m. That lasted until about daybreak. I had breakfast and got ready to come to court.

DEFENSE COUNSEL (*at the bench*): I object. I anticipate Mr. Clark [the prosecutor] is about to ask my client if he's been drinking this morning, and that's prejudicial.

PROSECUTOR: He said he's not under the influence of anything that would affect his ability. Earlier he stated he had been drinking this morning.

THE COURT: Overruled.

PASCALE (*testifying on further cross-examination*): I had my first beer at about four or five o'clock this morning. I had five or six beers. It doesn't affect my ability to remember what happened that night.

Pascale later testified on redirect examination by his defense counsel that "*I do not believe I am intoxicated right now. I believe I may stink of diesel [fuel], beer and cow. I had my last beer this morning around 6:30 or 7:00.*"

The record plainly shows that the trial court initially agreed with Pascale's lawyer that continuance of the jury trial scheduled that day was the "best solution." However, Pascale's lawyer was determined not to have his client jailed and his bond revoked based on the result of the portable breathalyzer test that was inadmissible as evidence. Although Pascale's attorney questioned whether that evidence was sufficient to prove that Pascale was intoxicated, he apparently agreed with the trial court's position on having Pascale examined by a more reliable breathalyzer. This was an obvious effort to prevent Pascale from being jailed for violating the condition of his bond; it was not, however, withdrawal of the concern about Pascale's competency to testify. But the trial court never ordered the more acceptable breathalyzer examination.

Because Pascale testified he had consumed as many as six beers before coming to his trial that morning and that he perhaps stank of diesel fuel, beer, and cattle, I cannot understand why his continuance motion was not granted or why the trial court's refusal to do so did not amount to an abuse of discretion. After all,

he was charged with driving while intoxicated (fourth offense), a crime for which conviction meant a mandatory term of imprisonment. He "stank" of alcohol as established by his lawyer's statement to the trial court and his own testimony. Even the trial judge opined that Pascale had brought the prospect of being jailed while his trial was continued on account of violating a bond condition "upon [himself] by coming to Court intoxicated." I do not see why it was fair and right to force Pascale to forego the continuance that even the trial court deemed the "best solution" to avoid being jailed based on a portable breathalyzer test result that would have been inadmissible had the trial court conducted a bond revocation hearing. Such tests are also inadmissible as proof of guilt in DWI convictions. *Patrick v. State*, 295 Ark. 473, 750 S.W.2d 391 (1988).

Arkansas trial courts and juries regularly convict DWI defendants based on proof about having consumed "a few beers" and having the smell of alcohol on them. Appellate decisions have upheld those convictions, based upon the observations of other people concerning the defendants, against challenges that the evidence was insufficient to support the conviction where it lacked a blood-alcohol assessment. *See State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996). Yet here, where the defendant admitted to consuming several beers and smelled of alcohol, the trial court ruled that the defendant was not impaired to testify although he could easily have been found impaired to drive.

In *Meekins v. State*, 34 Ark. App. 67, 806 S.W.2d 9 (1991), we affirmed a trial court's denial of a continuance motion despite evidence that the defendant had registered .19 on a breathalyzer test and the argument that he was unable to assist in voir dire and his trial. The case before us shows that *Meekins* should be overruled. Justice for DWI defendants should mean that the same evidence that is deemed sufficiently probative to support DWI convictions should at least be probative to show that these defendants should not stand trial while obviously under the influence of intoxicants. We ought to be at least as diligent about preventing drunk testifying as we are at preventing drunk driving.

I respectfully dissent.