Doyle Vandull "Roundman" SMITH *v.* STATE of Arkansas

CR 98-1212                                   988 S.W.2d 492

Supreme Court of Arkansas
Opinion delivered April 15, 1999

---

*John R. Irwin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Doyle Vandull "Roundman" Smith appeals the judgment of the Conway County Circuit Court convicting him of first-degree murder, criminal use of a prohibited weapon, and felon in possession of a firearm and sentencing him to a concurrent term of life imprisonment. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant's sole contention on appeal is that the trial court erred in denying his motion for directed verdict on the charge of first-degree murder. Although he does not deny shooting twenty-eight-year-old Johnny McClelland, he asserts that the State failed to prove that he shot McClelland with the purpose or intent of causing his death. We find no error and affirm.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* We consider only the evidence that supports the conviction without weighing it against other evidence favorable to the accused. *Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996).

To sustain a conviction for first-degree murder, the State was required to prove that Appellant purposely caused the

death of Johnny McClelland. *See* Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result[.]" Ark. Code Ann. § 5-2-202(1) (Repl. 1997). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Mulkey v. State*, 330 Ark. 113, 952 S.W.2d 149 (1997). The intent necessary to sustain a conviction for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.* It is axiomatic that one is presumed to intend the natural and probable consequences of his actions. *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996). Circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict. *Mulkey*, 330 Ark. 113, 952 S.W.2d 149. For circumstantial evidence alone to constitute substantial evidence, it must exclude every other reasonable hypothesis consistent with innocence. *Id.*; *Key*, 325 Ark. 73, 923 S.W.2d 865. Once the evidence is determined to be sufficient to go to the jury, the question of whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the jury to decide. *Id.*

The record reflects that on or about December 18, 1997, Appellant shot and killed McClelland at the home of McClelland's wife, Susan, in Morrilton. Appellant had been living with Susan and her children for about one month. Because Appellant did not deny shooting McClelland, the only issue we need determine is whether there is substantial evidence to support a finding that Appellant acted "[w]ith a purpose of causing the death of another person," as required by section 5-10-102(a)(2). The following testimony, viewed in a light most favorable to the State, constitutes substantial evidence that Appellant purposely caused McClelland's death.

Detective Phillip Russell Quinn, of the Morrilton Police Department, testified that he conducted the investigation of the crime scene at the McClelland home. He determined that the gun used by Appellant to shoot McClelland was a sawed-off, 12-gauge Mossberg shotgun that had been modified with a pistol

grip. He indicated that it was a pump shotgun that had to be physically manipulated to force a shell into the chamber. On the date of the shooting, Quinn interviewed Appellant about the incident, and that interview was subsequently read to the jury. Appellant claimed that the shooting was accidental. He gave the following account of the incident to Quinn.

McClelland came to the house with another man, later identified as John Scott Birch. A fight ensued between McClelland and Appellant in the back bedroom, resulting in injuries to both men. During the fight, Appellant heard McClelland tell Birch to go out to the truck and get the gun. Appellant then grabbed the shotgun from a corner in the bedroom, and fired once into the ceiling to let them know that he had a gun. He then backed away from the bedroom doorway so that the two men could leave. The two men left the bedroom, went through the living room, and started into the dining room when Appellant turned the corner into the dining room and, according to Appellant, the gun accidentally discharged. He thought that he ran into the door facing or something else, forcing the gun to discharge. After McClelland had been shot, Appellant walked outside with the gun and said to Birch, "You know, you still want some?" Appellant told Quinn that at the time of the shooting, the two men were attempting to leave the house, and that he was following them because he thought they had a gun outside in their vehicle. Appellant admitted, however, that he never saw either McClelland or Birch with a gun in their possession. Quinn's investigation confirmed that neither McClelland, Birch, nor Birch's girlfriend, Shelly Higgins, possessed a gun — on their persons or inside McClelland's truck.

Officer Brad Harness, of the Morrilton Police Department, testified that he conducted a pat-down search of Appellant, prior to placing him in a holding cell, and retrieved a .22-caliber Derringer pistol, with two live rounds of hollow-point ammunition in it. He stated that he retrieved the pistol from Appellant's right front pants pocket. This evidence supported the prosecution's theory that Appellant had the choice of defending himself with either gun, and that his decision to use the shotgun rather than the small-caliber gun was evidence of his purpose to kill McClelland.

Dr. Stephen Erickson, a medical examiner at the Arkansas State Crime Laboratory, stated that the victim died as a result of a single gunshot wound to the chest area. Specifically, Dr. Erickson stated that the shotgun blast entered the victim on the left side of his chest and that the pellets went from the left to the right, steeply upwards, and from back to front. He stated further that at the time of the shooting, the muzzle of the gun was placed in loose contact with the victim's skin. He indicated that a .22-caliber bullet would have caused a lot less damage to the victim than a shotgun blast.

Shelly Higgins testified that on December 18, 1997, she, Birch, and McClelland were traveling from Memphis to their homes in Missouri when they stopped at Susan McClelland's house in Morrilton. Higgins said that McClelland wanted to give his wife and kids some money for Christmas. They did not know that Appellant was at Mrs. McClelland's house at the time. Higgins said that McClelland and Birch went into the house, and that she waited in the truck, while the motor was running, because they were not supposed to be there long. McClelland and Birch had only been inside the house for a few minutes when Higgins heard Mrs. McClelland yelling. Higgins then heard a gunshot and saw Birch come running out of the house. Birch asked Higgins where McClelland was, and she said that he had not come out of the house yet. Higgins heard another gunshot and saw McClelland come out of the house, where he fell to the ground. Higgins then saw Appellant come out of the house with a gun, yelling angrily at Birch, "Do you want me to shoot you, too? You want some, too?"

Birch testified that he went inside the house with McClelland, but that he initially waited in the dining room. He heard McClelland and Appellant fighting in the bedroom, and heard McClelland saying, "Let go of my hair. That's my wife." Birch then went into the bedroom and tried to break up the fight. Appellant had hold of McClelland's hair, so Birch hit Appellant a few times to break up the fight. When Birch heard the first gunshot, he ran out of the house. Birch thought McClelland ran with him. When Birch made it outside, he asked Higgins where

McClelland was. A few seconds later, Birch heard a gunshot and saw McClelland walk out the door.

Trooper Dewayne Luter, of the Arkansas State Police, testified about his interview with Mrs. McClelland's fourteen-year-old daughter, the victim's stepdaughter, Alicia Bradley. Luter stated that Alicia told him that she saw all three men in the dining room and that Appellant was holding the gun. She told Luter that "I turned around to go back in the bedroom cause [*sic*] I thought that they were gonna leave because they were walking toward the door and I turned around and I seen my stepdad laying on the ground." Officer Joey Nutt, of the Morrilton Police Department, also took a statement from Alicia Bradley. He read the following part of that statement to the jury:

> Alicia Bradley stated she came into the living room and was going to tell them to leave, the police are coming. She stated all of these men were in the southeast bedroom and [Appellant] had a gun. That he shot once to show them that it was loaded. And they started running out of the bedroom, through the living room toward the kitchen. And that [Appellant] shot the victim in the doorway between the living room and kitchen and the victim then ran outside.

Appellant did not take the stand in his own behalf. Instead, he relied on his statement to police, wherein he maintained that the shotgun discharged accidentally, striking McClelland. Additionally, Appellant urged the jury to consider that he was justified in shooting McClelland in self-defense, on the basis of his statements to Detective Quinn. On appeal, Appellant challenges the credibility of the State's witnesses and contends that the jury had to rely on speculation and conjecture in order to find him guilty of this offense. We disagree.

■ ■ In the first place, any conflicts or inconsistencies in the evidence were for the jury, as the trier of fact, to resolve, not for the trial court to resolve on a directed-verdict motion. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). In the second place, the foregoing testimony constitutes substantial evidence to support the jury's verdict of first-degree murder. Perhaps the most damaging evidence was Higgins's statement, which Appellant admitted making, that after McClelland came out of the

house and fell to the ground, Appellant came outside with the shotgun in his hands and angrily asked Birch, "Do you want me to shoot you, too? You want some, too?" Additionally, there was evidence that contradicted Appellant's justification defense, namely that at the time of the shooting, the fight between the men was over, and McClelland and Birch were leaving. Alicia Bradley's statement to Officer Nutt established this evidence, and Appellant said as much in his statement to Detective Quinn. Moreover, Appellant admitted that he never saw either McClelland or Birch with a gun in their possession.

■ ■ The fact that the jury chose not to believe Appellant's defense of accident or justification does not lessen the substantial nature of the evidence supporting his conviction of first-degree murder. One who asserts the defense of justification of a homicide must show not only that the person killed was using deadly physical force, but that he (the defendant) responded with only that force necessary and that he could not have avoided the killing. *See* Ark. Code Ann. § 5-2-607 (Repl. 1997); *Williams*, 325 Ark. 432, 930 S.W.2d 297. The jury was instructed accordingly by the trial court and rejected Appellant's defense. This rejection is supported by the same evidence we discussed in affirming the jury's finding that Appellant had acted purposefully in this case. The jury was entitled to believe the State's witnesses and to disbelieve Appellant's evidence. *Solomon v. State*, 323 Ark. 178, 913 S.W.2d 288 (1996).

*Rule 4-3(h)*

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.